**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARON BYCKO; DAVID GRUBBS; ANGELA KILLMAN-ANDERSON; DEBRA LAWLESS; PAMELA S. NORTON; and JEREMY WALLER on behalf of themselves and all others similarly situated, | Civil Action No. 3:23-cv-1316 <br><br> Hon. Michael A. Shipp, U.S.D.J. <br> Hon. Tonianne J. Bongiovanni, U.S.M.J. |
| Plaintiffs, | Motion Day: August 7, 2023 |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; VERISK ANALYTICS, INC. d/b/a ISO CLAIMSEARCH; and INSURANCE SERVICES OFFICE, INC., a subsidiary of Verisk, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

---

### DEFENDANTS VERISK ANALYTICS, INC. d/b/a ISO CLAIMSEARCH AND INSURANCE SERVICES OFFICE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

---

*Of Counsel and on the Brief*
Matthew G Wapner, Esq.
Christopher A. Rojao, Esq.
Kimberly C. Metzger, Esq. (*pro hac vice*
application forthcoming)

*On the Brief*
  Ryan M. Savercool, Esq.

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
*Attorneys for Defendants*
*Verisk Analytics, Inc. d/b/a ISO*
*ClaimSearch and Insurance Services*
*Office, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT BACKGROUND........................................................................... 4

    A.    ClaimSearch Plays a Vital Role in Preventing Insurance Fraud........ 4

    B.    The Complaint Fails to Allege Facts Specific to the Named Plaintiffs, or Facts that Explain How Verisk is Tortiously Using Plaintiffs' Information........................................................................ 6

LEGAL ARGUMENT ....................................................................................... 8

  I.    PLAINTIFFS LACK STANDING BECAUSE THE COMPLAINT DOES NOT CONTAIN ANY PARTICULARIZED ALLEGATIONS AS TO THEIR PRIVATE INFORMATION ................................................. 8

  II.    PLAINTIFFS FAIL TO STATE AN INVASION OF PRIVACY CLAIM UPON WHICH RELIEF MAY BE GRANTED ......................... 11

    A.    Plaintiffs Fail To Allege Facts That Satisfy The "Highly Offensive To A Reasonable Person" Element Of Their Claims...... 13

    B.    Plaintiffs Fail To Plead The Elements Of A Publicity Given To Private Life Claim (Count One)..................................................... 23

    C.    Plaintiffs Have Not Alleged An Actionable "Intrusion" By Verisk In Order To State An Intrusion Upon Seclusion Claim (Count Two) ...................................................................................... 30

  III.    THE COURT MUST DISMISS THE COMPLAINT BECAUSE VERISK IS ENTITLED TO STATUTORY IMMUNITY ...................... 32

    A.    Verisk is Entitled to Immunity from Suit Pursuant to Oklahoma's Insurance Fraud Reporting Statute................................................... 32

    B.    Verisk is Entitled to Immunity Pursuant to § 230 of the Communications Decency Act........................................................ 35

  IV.    PLAINTIFFS ARE NOT ENTITLED TO THE REMEDY OF DISGORGEMENT AS A MATTER OF LAW........................................... 38

CONCLUSION ................................................................................................. 40

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adam v. Barone*,
   41 F.4th 230 (3d Cir. 2022) ...............................................................................11

*Anderson v. Blake*,
   2005 WL 2716302 (W.D. Okla. Oct. 21, 2005) ..........................................30, 31

*Anderson v. Suiters*,
   499 F.3d 1228 (10th Cir. 2007) .....................................................29, 31, 32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................1, 12

*Barker v. Manti Telephone Co.*,
   2009 WL 47110 (D. Utah Jan. 6, 2009) .............................................................32

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................1, 11

*Busse v. Motorola, Inc.*,
   813 N.E.2d 1013 (Ill. App. 2004).......................................................................25

*Capp v. Cnty. of San Diego*,
   940 F.3d 1046 (9th Cir. 2019) ...........................................................................12

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   140 S. Ct. 1009 (2020)........................................................................................12

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016) ..............................................................................12

*Dennis v. MyLife.Com, Inc.*,
   2021 WL 6049830 (D.N.J. Dec. 20, 2021)......................................35, 36, 37, 38

*Doe v. Brundage–Bone Concrete Pumping, Inc.*,
   2006 WL 2472850 (W.D. Okla. Aug. 23, 2006).........................................17, 18

*Doe v. Samford Univ.*,
   29 F.4th 675 (11th Cir. 2022) ....................................................................13, 34

*Dubbs v. Head Start, Inc.*,
    336 F.3d 1194 (10th Cir. 2003) ............................................................................30

*Dutton v. City of Midwest City*,
    353 P.3d 532 (Okla. 2015) .............................................................................38, 40

*Eddy v. Brown*,
    71 P.2d 74 (Okla. 1986) ................................................................................26, 28

*Elk City Golf & Country Club, Inc. v. Philadelphia Indem. Ins. Co.*,
    2019 WL 7195613 (W.D. Okla. Dec. 26, 2019) ...................................................4

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) .........................................................................16, 19

*Fletcher v. Price Chopper Foods of Trumann, Inc.*,
    220 F.3d 871 (8th Cir. 2000) ..............................................................................20

*Gardner Tanenbaum, LLC v. Benham Co., LLC*,
    514 P.3d 68 (Okla. Civ. App. 2022) ...................................................................38

*George v. Rehiel*,
    738 F.3d 562 (3d Cir. 2013) ...............................................................................34

*Griffith v. Colo., Div. of Youth Servs.*,
    17 F.3d 1323 (10th Cir. 1994) ............................................................................41

*Guinn v. Church of Christ of Collinsville*,
    775 P.2d 766 (Okla. 1989) .................................................................................29

*Hammerling v. Google LLC*,
    2022 WL 2812188 (N.D. Cal. July 18, 2022) ....................................................20

*Harris v. Oxbow Carbon LLC*,
    2021 WL 5933114 (W.D. Okla. Apr. 12, 2021) ............................................13, 23

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) .............................................................................8, 9

*Henderson v. Source for Pub. Data, L.P.*,
    53 F.4th 110 (4th Cir. 2022) ...............................................................................36

ME1 44901120v.1

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ........................................................................35

*Hopkins v. Saunders*,
199 F.3d 968 (8th Cir. 1999) ..............................................................................40

*Hydro Turf, Inc. v. Int'l Fidelity Ins. Co.*,
91 P.3d 667 (Okla. Civ. App. 2004) ....................................................................38

*Judge v. Saltz Plastic Surgery, P.C.*,
367 P.3d 1006 (Utah 2016)..................................................................................29

*Krug v. Helmerich & Payne, Inc.*,
320 P.3d 1012 (Okla. 2013).................................................................................38

*Leslie v. Fielden*,
2011 WL 4005939 (N.D. Okla. 2011) .........................................................15, 16

*Lockett v. Webco Indus., Inc.*,
2022 WL 1184040 (10th Cir. Apr. 21, 2022)...............................................14, 30

*Loven v. Church Mut. Ins. Co.*,
452 P.3d 418 (Okla. 2019)...........................................................................33, 35

*Lutz v. Portfolio Recovery Assocs., LLC*,
49 F.4th 323 (3d Cir. 2022) ................................................................................12

*Malverty v. Equifax Info. Servs., LLC*,
407 F. Supp. 3d 1257 (M.D. Fla. 2019).............................................................25

*McDermott v. Clondalkin Grp., Inc.*,
649 F. App'x 263 (3d Cir. 2016) .......................................................................10

*Meyerson v. Prime Realty Servs., LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005).............................................................25

*Mousavi v. John Christner Trucking, LLC*,
487 F. Supp. 3d 1194 (N.D. Okla. 2020)............................................................15

*Munley v. ISC Fin. House, Inc.*,
584 P.2d 1336 (Okla. 1978).....................................................................*passim*

iv

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ...............................................................9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ...............................................................14

*Park v. Trican Well Serv., L.P.*,
2015 WL 4886992 (W.D. Okla. Aug. 17, 2015) ...............................27

*Peterson v. Moldofsky*,
2009 WL 3126229 (D. Kan. Sept. 29, 2009) .....................................32

*Phillips v. Grendahl*,
312 F.3d 357 (8th Cir. 2002) .............................................................20

*Phuong Nguyen v. Globe Life*,
No. 18-cv-557, 2019 WL 208900 (W.D. Okla. Jan. 15, 2019) ..........27

*Ramsdell v. Hartford Hosp.*,
2019 WL 659344 (Conn. Super. Ct. Jan. 14, 2019) ..........................32

*Regions Bank v. Kaplan*,
2021 WL 4852268 (11th Cir. 2021) .............................................28, 29

*Reuber v. Food Chemical News, Inc.*,
925 F.2d 703 (4th Cir. 1991) .............................................................32

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) .............................................................13

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974)..............................................................................8

*Setzer v. Farmers Insurance Company, Inc.*,
185 F. App'x 748 (10th Cir. 2006) ...............................................17, 18

*Sprint Nextel Corp. v. Middle Man, Inc.*,
822 F.3d 524 (10th Cir. 2016) ...........................................................40

*Taverna v. First Wave, Inc.*,
2010 WL 2902240 (N.D. Okla. July 22, 2010) .................................28

ME1 44901120v.1

*Thomas v. City of Bartlesville, Okla.*,
2011 WL 5119518 (N.D. Okla. Oct. 28, 2011) .................................................27

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) .............................................................................32

*Tillman v. Camelot Music, Inc.*,
408 F.3d 1300 (10th Cir. 2005) ...................................................................39, 40

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) .......................................................................................11

*United States v. Mompie*,
216 F. Supp. 3d 944 (S.D. Ind. 2016) .................................................................5

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) .........................................................................................40

*Vega v. Chicago Park Dist.*,
958 F. Supp. 2d 943 (N.D. Ill. 2013) ................................................................25

**Statutes & Regulations**

15 U.S.C. § 6802 ..........................................................................................................5

47 U.S.C.  § 230 ...............................................................................................3, 36, 37

N.J.A.C. 13:88-2.4 ........................................................................................................5

N.J. Stat. Ann. §17:33A-9 ...........................................................................................13

Okla. Stat. Ann. tit. 36, § 104 .....................................................................................34

Okla. Stat. Ann. tit. 36, § 307.2 ...................................................................................5

Okla. Stat. Ann. tit. 36, § 363(C) ........................................................................*passim*

Okla. Admin. Code 365:35-1-4 ...................................................................................18

Okla. Admin. Code 365:35-1-32 .....................................................................19, 21, 24

Okla. Admin. Code 365:35-1-32(a)(2) .......................................................................19

Okla. Admin. Code 365:35-1-40 .................................................................................19

ME1 44901120v.1

## **PRELIMINARY STATEMENT**

Defendants Verisk Analytics, Inc. d/b/a ISO ClaimSearch, and Insurance Services Office, Inc. (collectively, "Verisk") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint. This Court should dismiss the Complaint because Plaintiffs (1) lack standing; (2) fail to comply with the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); (3) fail to plead the *prima facie* elements of the invasion of privacy claims they assert against Verisk; and (4) otherwise fail to state a claim upon which relief may be granted because Verisk's conduct is the subject of federal and state immunity.

Plaintiffs are five Oklahoma residents who allege that Defendant State Farm Mutual Automobile Insurance Company ("State Farm") improperly submitted unspecified records containing "Private Information" to Verisk to be included in Verisk's ClaimSearch® database (hereinafter "ClaimSearch"). Plaintiffs further claim—without any explanation—that Verisk is improperly profiting from this information by providing its analysis of Plaintiffs' unspecified "Private Information" to unspecified third parties, which may include government agencies and claims adjusters. Plaintiffs assert two invasion of privacy claims against Verisk, and seek to certify a class composed of Oklahoma policyholders whose claim information has been submitted to Verisk by State Farm.

1

After casting aside the general allegations purporting to summarize privacy and insurance laws and the other conclusory allegations forming the bulk of the Complaint, it becomes evident that the Complaint fails to include the necessary particularized allegations about any of the named plaintiffs. Specifically, the Complaint does not set forth any facts regarding (1) the nature of any insurance claim made; (2) the alleged Private Information provided by Plaintiffs in these insurance claims, or (3) the date of any claim. In fact, the Complaint does not contain any well-pleaded allegations regarding what information, if any, State Farm actually submitted to Verisk about Plaintiffs. As to Verisk, the Complaint does not offer *any* facts regarding Verisk's conduct, such as to whom Plaintiffs' information was provided (if at all), why the information was provided, and, most basically, *what* information was provided. Plaintiffs must plead these facts to establish standing to state a claim, represent the class they seek to certify, and to satisfy Article III's injury-in-fact requirement. As pleaded, the Complaint merely asserts generalized grievances with the insurance industry, which fail as a matter of law.

Plaintiffs also fail to state an invasion of privacy claim upon which relief may be granted. Count One purports to state a claim for publicity given to private life under Oklahoma law. Plaintiffs, however, do not allege facts from which this Court could infer that Verisk's unspecified publication of Plaintiffs' information (1) was

2

highly offensive to a reasonable person, (2) contained private facts, (3) was publicized to a sufficiently sized audience to be actionable, and (4) did not involve a matter of legitimate public concern. Absent well-pleaded factual allegations plausibly establishing these elements, the Court must dismiss Count One.

Count Two, which purports to state a claim for intrusion upon seclusion under Oklahoma law, fails for the simple reason that Plaintiffs do not allege an *intrusion* by Verisk. Plaintiffs only allege that Verisk received information from State Farm for inclusion in its ClaimSearch database. Under Oklahoma law, receipt of information is not an intrusion. This claim also fails because Plaintiffs do not allege any conduct that is highly offensive to a reasonable person. Count Two thus fails.

The Court should also dismiss the Complaint in its entirety on two distinct immunity grounds. First, Verisk's use of ClaimSearch is subject to Oklahoma's civil immunity for insurance fraud reporting services. Okla. Stat. Ann. tit. 36, § 363(C). Second, Verisk's use of ClaimSearch is subject to Section 230 of the Communications Decency Act ("CDA"), which provides broad immunity for claims brought against information service providers who publish information originating from a third-party, such as what is alleged here. 47 U.S.C. § 230(c)(1), (f)(1).

Finally, this Court should dismiss or strike Plaintiffs' claim for disgorgement. Oklahoma law bars equitable remedies such as disgorgement when the pleaded

causes of action provide an adequate remedy at law. It is well-settled that invasion of privacy claims provide an adequate remedy at law (i.e., damages for emotional distress and other harms proximately caused by the invasion).

## RELEVANT BACKGROUND

### A.    ClaimSearch Plays a Vital Role in Preventing Insurance Fraud

As set forth in the Complaint, Plaintiffs have brought claims against Verisk and ISO doing business as "ISO ClaimSearch."[1] Compl. ¶ 1. ClaimSearch is an online insurance fraud detection database designed and used to prevent criminal activity, fraud, and misrepresentations in insurance transactions. *See* Compl. ¶ 8, n.6, n.7; *Elk City Golf & Country Club, Inc. v. Philadelphia Indem. Ins. Co.*, 2019 WL 7195613, at *2 (W.D. Okla. Dec. 26, 2019) (explaining that ClaimSearch is "an insurance fraud detection system" that "contains detailed records of losses paid from participating insurers," and that "[i]nsurance companies can . . . send claims information to [Verisk] to check whether similar claims have been filed with other insurance companies").

A number of states expressly permit reporting of insurance claims to ClaimSearch. For example, the New Jersey Office of the Insurance Fraud Prosecutor

---

[1] ISO is a wholly owned subsidiary of Verisk, and holds the intellectual property to ClaimSearch. Defendants refer to Verisk and ISO together for ease of reference.

*requires* all insurers that write in excess of $2 million/year in direct auto insurance premiums to report all auto accidents involving bodily injury claims and auto physical damage greater than $2,000 to the Office of the Insurance Fraud Prosecutor or, in the alternative, to ClaimSearch directly. *See* N.J.A.C. 13:88-2.4.

Oklahoma also promotes the collection of information to defend against insurance fraud. Oklahoma adheres to the Gramm-Leach-Bliley Act of 1999 ("GLBA"), which permits the disclosure of non-public personal information *without notice* to the consumer for investigative purposes. *See* Okla. Stat. Ann. tit. 36, § 307.2 (adopting GLBA standards); 15 U.S.C. § 6802(e)(3)(B) (permitting disclosure of nonpublic personal information "to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability"). Oklahoma provides immunity to organizations who receives or furnish data for the detection of fraud—such as Verisk—from or to the National Insurance Crime Bureau ("NICB"),[2] law enforcement, insurers, and any other organization "involved in the prevention and detection of fraudulent insurance activities." Okla. Stat. Ann. tit. 36, § 363(C).

---

[2] "The NICB is a non-profit organization that receives support from insurance companies, and its mission is to lead a united effort between insurers and law enforcement agencies to prevent and combat insurance fraud and crime." *United States v. Mompie*, 216 F. Supp. 3d 944, 947 (S.D. Ind. 2016).

ME1 44901120v.1

**B.**    **The Complaint Fails to Allege Facts Specific to the Named Plaintiffs, or Facts that Explain How Verisk is Tortiously Using Plaintiffs' Information**

Beyond cursory references to trademarks held by Verisk, the Complaint says nothing about how Verisk has improperly used or profitized the data it receives from insurers—let alone how it has improperly disclosed *Plaintiffs'* personal information. Plaintiffs only assert in the most general manner that Verisk "compiles Plaintiffs' Private Information in a database that is analyzed, and the results are regularly sold to companies, governmental agencies, and individuals around the world for a wide range of reasons . . . ."[3] Compl. ¶ 19.

Despite naming multiple Plaintiffs, the Complaint only alleges—and only "upon information and belief"—that State Farm may have submitted "Private Information" to Verisk for one plaintiff, Angela Killman-Anderson. *See id.* at ¶ 24. And then, even for Plaintiff Killman-Anderson, the Complaint is *silent* as to what information State Farm provided to Verisk. Finally, the Complaint omits any well-pleaded factual allegations regarding how Verisk improperly used Plaintiff Killman-

---

[3] The Complaint defines "Private Information" as "'non-public personal information' ("NPPI") under GLBA, 'Protected Health Information' ('PHI') under HIPAA, or other information where statutory or common law provides class members with a reasonable expectation that it will be held as confidential." Compl. ¶ 37. The Complaint does not identify any specific "Private Information" belonging to Plaintiffs that has been transmitted to either State Farm or Verisk.

6

Anderson's "Private Information," or information regarding any other Plaintiff. The Complaint does not state to whom Verisk allegedly sold Plaintiffs' information, what compensation Verisk allegedly received, what information was disclosed to the unspecified third parties, why this unspecified information was disclosed, and so on. At best, the Complaint alleges that adjusters may access ClaimSearch to pull reports about a claimant; it does not identify a single instance when an adjuster (or anyone) pulled a report *about any named plaintiff*. *See id.* ¶ 31.

Plaintiffs filed this action in the Superior Court of New Jersey, Law Division, asserting two invasion of privacy claims against Verisk: publicity given to private life, and intrusion upon seclusion. *See id.* ¶¶ 47-64. Plaintiffs contend that they have suffered, "at least," nominal damages. *See id.* ¶¶ 56, 62-64. They speculate that their insurance claims may have been "second-guess[ed]," their policy premiums may have increased, and they were somehow denied the opportunity to profit off the sale of their own information. *Id.* By way of relief, Plaintiffs seek an Order enjoining Verisk from selling the putative class's private information and/or retaining such information without specific authorization, and ordering disgorgement of Verisk's profits. *See id.* ¶ 79. Verisk moves to dismiss the Complaint for lack of standing, and for failure to state a claim upon which relief may be granted.

7

## LEGAL ARGUMENT

### I. PLAINTIFFS LACK STANDING BECAUSE THE COMPLAINT DOES NOT CONTAIN ANY PARTICULARIZED ALLEGATIONS AS TO THEIR PRIVATE INFORMATION

This Court should dismiss the Complaint for lack of standing because Plaintiffs do not adequately allege that they are part of the class they purport to represent, and because Plaintiffs otherwise fail to establish an injury-in-fact for purposes of standing under Article III of the U.S. Constitution.

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Where, as here, "the plaintiff's ability to fall within the class definition not only depends upon whether the plaintiff sustained the same injury as the class, but also upon whether the plaintiff sustained any injury at all, . . . the issue of the plaintiff's constitutional standing is invoked." *Id.* "[C]lass representatives must meet Article III standing

8

requirements the moment a complaint is filed." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015).

Conspicuously absent from the Complaint are any non-conclusory allegations demonstrating that the named plaintiffs are part of the class they purport to represent, or that they suffered the injury that the class allegedly sustained. These deficiencies mandate dismissal of the Complaint.

The Complaint seeks certification of a "General Class" composed of

> [a]ny person who initiated at least one insurance claim under a policy provided by an insurer licensed by the State of Oklahoma to sell the policy under which the claim was made, and regarding whom State Farm submitted Private Information to Verisk / ISO which Private Information was maintained in Verisk / ISO's database at least as recently as the start of the Class Period.

Compl. ¶ 36. In addition, the Complaint seeks to certify a "Third Party Subclass" composed of "General Class member(s) who made at least one third-party insurance claim regarding an Oklahoma-based insurance policy issued by State Farm," and a "First Party Subclass" composed of "General Class member(s) who made at least one first-party insurance claim regarding an Oklahoma-based insurance policy issued by State Farm." *Id.*

The Complaint does not allege, with respect to the named plaintiffs, the prerequisites for inclusion in the classes defined in the Complaint. In particular, it

9

does not allege (1) whether the named plaintiffs made any insurance claim under an Oklahoma policy (with the exception of Plaintiff Killman-Anderson); (2) whether any named plaintiff made a first-party insurance claim regarding a State Farm Oklahoma policy; (3) whether any named plaintiff made a third-party insurance claim regarding a State Farm Oklahoma policy; (4) whether State Farm transmitted any of the named plaintiffs' information to Verisk;[4] or (5) whether Verisk improperly sold any of the named plaintiffs' information—the alleged injury that the class suffered. These shortcomings warrant the dismissal of Plaintiffs' claims for lack of standing because the Complaint does not plausibly establish that Plaintiffs are part of the class they seek to certify, or that Plaintiffs suffered the injury at issue.

At a more fundamental level, none of Plaintiffs have met their burden of establishing "that he [or she] suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021).

---

[4] This Court should not credit the Complaint's allegation, made on information and belief, that State Farm provided Plaintiff Killman-Anderson's information to Verisk. *See* Compl. ¶ 24. Pleading facts made "upon information and belief" is permissible only "'[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Plaintiffs rely exclusively on boilerplate and conclusory allegations in support of their claims.

To demonstrate that they suffered an injury-in-fact, each plaintiff must state facts alleging that she "suffered an invasion of a legally protected interest, [and] that the harm is concrete and particularized to her." *Adam v. Barone*, 41 F.4th 230, 234 (3d Cir. 2022). Plaintiffs have not made that showing. There are no allegations that Plaintiffs' information was provided to Verisk specific to an insurance claim they made, and there are no specific allegations regarding what Verisk did with Plaintiffs' information. At bottom, Plaintiffs have failed to allege that they have a "personal stake" in the outcome of this purported class action. *TransUnion*, 141 S. Ct. at 2203. Accordingly, this Court should dismiss the Complaint for lack of Article III standing.

## II.   PLAINTIFFS FAIL TO STATE AN INVASION OF PRIVACY CLAIM UPON WHICH RELIEF MAY BE GRANTED

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This Court applies a three-step process to resolve a motion to dismiss:

> The first step in that process requires an articulation of the elements of the claim. The second step involves reviewing the complaint and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and the factual. The third step evaluates the plausibility of the remaining allegations.

11

*Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022) (internal quotation marks, citations, and alterations omitted).

"[A]t the outset of a lawsuit," a plaintiff ordinarily must plead "what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 140 S. Ct. 1009, 1014 (2020). A plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (internal quotation marks and citations omitted). Neither "naked assertions devoid of further factual enhancement" nor "mere conclusory statements" suffice to state a claim. *Iqbal*, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being plausible. *Id.* In other words, "an allegation is not plausible where there is an 'obvious alternative explanation' for alleged misconduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 682). "[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to

infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). For the reasons that follow, Plaintiffs' Oklahoma invasion of privacy claims fail as a matter of law.[5]

## A. Plaintiffs Fail To Allege Facts That Satisfy The "Highly Offensive To A Reasonable Person" Element Of Their Claims

Plaintiffs' invasion of privacy claims require proof that the publication or intrusion at issue is "highly offensive to a reasonable person." *Harris v. Oxbow Carbon LLC*, 2021 WL 5933114, at *3 (W.D. Okla. Apr. 12, 2021) (publicity claim); *Lockett v. Webco Indus., Inc.*, 2022 WL 1184040, at *3 (10th Cir. Apr. 21, 2022)

---

[5] Verisk assumes for this motion that Oklahoma law applies to Plaintiffs' privacy claims, but reserves the right to argue that New Jersey law applies should Plaintiffs' claims survive this motion and discovery so indicate. There appears to be a conflict between the scope of Oklahoma and New Jersey's civil immunity statutes for insurance fraud detection functions. Okla. Stat. Ann. tit. 36, § 363(C)(3); N.J. Stat. Ann. §§ 17:33A-9(b). In light of this potential conflict, the Restatement (Second) of Conflict of Laws § 153 "calls for application of the local law of the state where the plaintiff was domiciled at the time when his privacy was invaded unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." *Restatement (Second) of Conflict of Laws* § 153, cmt. b; *see also Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) (applying Section 153 under New Jersey's choice of law rules). Plaintiffs reside in Oklahoma and received insurance policies issued in Oklahoma. Compl. ¶¶ 5, 11. Verisk presently agrees with their assertion that "substantive Oklahoma law governs [their] claims." *Id.* ¶ 11.

(intrusion upon seclusion claim). Plaintiffs have not adequately pled this *prima facie* element of their claims.[6]

The Oklahoma Supreme Court has established a high standard of proof for the "highly offensive" prong for an invasion of privacy claim, applying the same standard as for an intentional infliction of emotional distress claim:

> The torts of intentional infliction of mental distress and invasion of privacy are part of a modern development in the law to afford some redress to plaintiffs who have suffered from certain previously non-actionable forms of anti-social behavior. Inherent in the development of these new forms of action is an attempt to strike a medium between some of the merely unpleasant aspects of human interpersonal relationships on the one hand and clearly unacceptable conduct on the other. There is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual. If recovery for damage done is to be afforded at all, there must be some test by which to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment.

*Munley v. ISC Fin. House, Inc.*, 584 P.2d 1336, 1338 (Okla. 1978).

Accordingly, "[t]his tort is not available for every intrusion upon a person's privacy." *Mousavi v. John Christner Trucking, LLC*, 487 F. Supp. 3d 1194, 1203

---

[6] This Court may decide the "highly offensive" issue as a matter of law on the pleadings. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 295 n.205 (3d Cir. 2016).

14

(N.D. Okla. 2020). An invasion of privacy claim is "reserved for extreme conduct."
*Leslie v. Fielden*, 2011 WL 4005939, at \*4 (N.D. Okla. 2011) (citing *Munley*, 584
P.2d at 1338). Plaintiffs fail to meet the "highly offensive" test for three reasons: (1)
the Complaint does not contain non-conclusory allegations; (2) publication and/or
intrusions concerning the information at issue—which Plaintiffs do not specifically
identify—do not rise to the level of extreme conduct; and (3) the legitimate interest
in combatting fraud outweighs Plaintiffs' privacy interests.

1.  <u>The Complaint Fails to Allege Facts from which this Court can
    Infer Conduct that is Highly Offensive to a Reasonable Person.</u>

The Complaint lacks any factual allegations that rise to the level of conduct
that "has clearly exceeded tolerable bounds of social deportment." *Munley*, 584 P.2d
at 1338. Instead, the allegations in the Complaint pertaining to the "highly offensive"
element of Plaintiffs' claims are entirely conclusory. *See* Compl. ¶¶ 53, 63.

Plaintiffs at best allege that Verisk's "decision to . . . store[] and profit from
[Plaintiffs'] Private Information would be highly offensive to a reasonable person."
*Id.* ¶ 63. Critically, however, Plaintiffs do not allege facts advising the Court of what
actual "Private Information" related to Plaintiffs is stored by Verisk in its capacity
of doing business as ISO ClaimSearch. *Id.* ¶ 1. Nor does the Complaint provide any
facts demonstrating how Verisk is improperly profiting from Plaintiffs' unspecified
private information, or how this profiting is highly offensive to a reasonable person.

Absent these facts, this Court cannot infer that Verisk engaged in the tortious conduct necessary for Plaintiffs' claim—that is, "extreme conduct," *Leslie*, 2011 WL 4005939, at *4, or conduct that "has clearly exceeded tolerable bounds of social deportment." *Munley*, 584 P.2d at 1338.

The Complaint must, at a minimum, identify the private and/or sensitive material specific to each Plaintiff that has allegedly been the subject of publication or an intrusion. *See Fisher v. Perron*, 30 F.4th 289, 297 (6th Cir. 2022) (holding that the complaint failed to allege that the information disclosed was "highly offensive to a reasonable person" because the complaint only contained "the bare allegation that the [recorded call at issue] 'involved private, personal, and sensitive financial, tax, and other information about the participants' own affairs,'" and "these conclusory allegations cannot support the inference that a reasonable person would find the disclosed information highly offensive"). Plaintiffs have failed to do so. The Complaint thus fails to state a claim upon which relief may be granted against Verisk.

        2.    <u>Invasion of Privacy Claims Predicated on the Insurance Industry's Use of Personal Information Fail as a Matter of Law Because the Conduct at Issue Does Not Rise to the Level of "Extreme Conduct"</u>

Even if this Court considers the generic and conclusory allegations regarding the storage of private information generally, Oklahoma law concerning access to sensitive information establishes that Plaintiffs' claims are meritless.

In *Setzer v. Farmers Insurance Company, Inc.*, 185 F. App'x 748 (10th Cir. 2006), the Tenth Circuit affirmed the dismissal of intentional infliction of emotional distress and intrusion upon seclusion claims concerning access to medical records by an insurer. The plaintiff alleged that an insurer improperly secured the plaintiff's medical records that were unrelated to the auto accident claim. *See id.* at 753. Despite the plaintiff giving the insurer a *limited* authorization to collect medical records related to her accident, the insurer proceeded to request a *complete* copy of the plaintiff's records, which included unrelated gynecological records. *Id.* at 753-54. The district court held that the insurer's alleged misconduct was "not outrageous in the context of case investigation and defense of an insurance claim for bodily injury damages," and that its actions did not rise to the "'highly offensive' level required by the tort of intrusion upon seclusion." *Id.* at 751. The Tenth Circuit affirmed, holding that the collection of unrelated medical records—even if improper—was not "highly offensive to a reasonable person" under Oklahoma law. *Id.* at 755.

Similarly, in *Doe v. Brundage–Bone Concrete Pumping, Inc.*, 2006 WL 2472850 (W.D. Okla. Aug. 23, 2006), a representative of the plaintiff's former employer appeared at a hospital and requested and obtained several of the plaintiff's billing records, despite lacking a release from the plaintiff. The improperly obtained medical records disclosed that the plaintiff had been treated for HIV. *Id.* at *1–2.

17

The court found that the conduct complained of by Mr. Doe was "no more offensive than what allegedly occurred in *Setzer*." *Id.* at \*4.

Based on these cases, this Court can hold that an insurer's access to medical records and/or information contained in medical records—even if improper (and Verisk does not concede that it was improper here)—is insufficient to state an invasion of privacy claim under Oklahoma law when it occurs in the course of a claim investigation or for other valid purposes.

Further undercutting Plaintiffs' contention that Verisk's disclosure of information via ClaimSearch rises to the level of "extreme conduct" is the Oklahoma Insurance Department's explicit carve out of this information from its privacy protections. The Oklahoma Insurance Department permits the disclosure of nonpublic financial information by licensees[7] without notice or opt-out mechanisms in order "to protect against or prevent actual or potential fraud or unauthorized transactions," among other things. Okla. Admin. Code 365:35-1-32(a)(2). The Oklahoma Insurance Department further permits the disclosure of nonpublic health information for myriad purposes, including

---

[7] A "Licensee" is defined as "all licensed insurers, producers and other persons licensed or required to be licensed, or authorized or required to be authorized, or registered or required to be registered pursuant to the Insurance Law of this state." Okla. Admin. Code 365:35-1-4.

18

> for the performance of the following insurance functions by or on behalf of the licensee or an affiliate of the licensee[:] claims administration; claims adjustment and management; detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity; underwriting; policy placement or issuance; loss control; [and] ratemaking . . . .

Okla. Admin. Code 365:35-1-40.

Given that the Oklahoma Insurance Department has expressly recognized a number of circumstances under which a licensee may disclose nonpublic financial or health information, Plaintiffs' vague allegations regarding the storage of their unspecified private information in ClaimSearch and Verisk's authorizing access to this information to government agencies and claim adjusters does not rise to the level of "extreme conduct" that is actionable as an invasion of privacy claim.

With respect to other sensitive information that may be stored in ClaimSearch—notwithstanding the fact that the Complaint does not allege specific facts regarding the nature of Plaintiffs' private information—courts across the country agree that the collection and/or disclosure of sensitive information is insufficient to state an invasion of privacy claim. *See, e.g.*, *Fisher*, 30 F.4th at 298 (holding that generic allegations regarding disclosure of "confidential financial and tax information" was insufficient to state a claim under Michigan law); *Phillips v. Grendahl*, 312 F.3d 357, 373 (8th Cir. 2002) (holding that discovery of social

security number "does not fit the profile of intrusion upon seclusion," and that "the use of improper methods to obtain information . . . does not necessarily make the acquisition of information highly offensive, if the information could just as well have been obtained by proper means"); *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (holding that the "unauthorized release of medical information" has not been treated as "highly offensive conduct" under the Restatement "when the information could otherwise have been obtained by proper means"); *Hammerling v. Google LLC*, 2022 WL 2812188, at *12 (N.D. Cal. July 18, 2022) ("[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy. Even disclosure of highly personal information such as social security numbers is not 'highly offensive.'").

This Court should follow this persuasive authority for these jurisdictions that, like Oklahoma, adhere to the Restatement (Second) and/or impose a high threshold for liability in order "to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment." *Munley*, 584 P.2d at 1338. Because the Complaint lacks allegations of "extreme conduct" that satisfies the highly offensive to a reasonable person element, Plaintiffs' claims fail.

3.    <u>Plaintiffs Fail to Satisfy the "Highly Offensive to a Reasonable Person" Test When Their Privacy Interests are Balanced Against the Public's Interest in Combating Insurance Fraud</u>

The Oklahoma Supreme Court has balanced the plaintiff's privacy interests against the defendant's legitimate interest in determining whether an alleged invasion of privacy rises to the level of tortious conduct. *See Gilmore*, 878 P.2d at 366-67. Assuming for the sake of argument that Plaintiffs' private information is stored on ClaimSearch, the claim information at issue here is not "highly offensive" as a matter of law when balancing the competing legitimate interests at stake.

In *Gilmore*, the Court held that plaintiff's invasion of privacy claim concerning his employer's random drug testing requirement "fail[ed] to meet the law's highly-offensive-to-a-reasonable person test." *Gilmore*, 878 P.2d at 362, 366-67. In so holding, the court balanced the plaintiff's privacy concerns against the employer's "legitimate interest in providing a drug-free workplace." *Id.*

This Court should likewise hold that Plaintiffs fail to meet the "highly offensive" test when balancing the interests at stake. Oklahoma permits the disclosure of nonpublic financial and health information for insurance fraud and claim investigation purposes, *see* Okla. Admin. Code 365:35-1-32, -40; and further provides civil immunity for the furnishing of information concerning suspected insurance fraud to relevant parties, Okla. Stat. Ann. tit. 36, § 363(C). These legal and

21

regulatory acts reflect Oklahoma's determination that detecting and preventing insurance fraud and related misconduct is a legitimate interest shared by Verisk, federal and state governments, and the public at large. *See Insurance Fraud,* FBI*, https://www.fbi.gov/stats-services/publications/insurance-fraud (last visited May 10, 2023) ("The total cost of insurance fraud (non-health insurance) is estimated to be more than $40 billion per year. That means Insurance Fraud costs the average U.S. family between $400 and $700 per year in the form of increased premiums.").

Verisk's interest in assisting government agencies, insurers, and other parties in vetting insurance claims for fraud and misconduct significantly outweighs the sparsely and vaguely referenced privacy interests identified in the Complaint. To reiterate, the Complaint *does not identify* what "Private Information" related to Plaintiffs, if any, is stored in ClaimSearch, and whether that information has been sold to, or accessed by, any third party. As such, Plaintiffs fail to identify any concrete harm that outweighs the legitimate interests in combatting insurance fraud and misconduct in order to state an invasion of privacy claim under Oklahoma law. *See Gilmore*, 878 P.2d at 366–67. Plaintiffs speculate that unspecified insurance claims may have been subject to "second guessing"; that their policy premiums have increased (though the Complaint does not trace such increases back to Verisk's conduct); and that they have been "denied the full opportunity to individually profit

22

from their Private Information kept and offered for sale by Verisk" (again, without any explanation as to why or how). Compl. ¶ 56. These putative harms are not sufficient to state a claim when balancing the parties' interests.

In sum, Plaintiffs fail to meet the highly-offensive-to-a-reasonable-person test for three reasons. First, the Complaint does not contain non-conclusory allegations that establish this *prima facie* element. Second, the law is clear that the disclosure of the information at issue do not rise to the level of extreme conduct. Third, Plaintiffs fail to satisfy this test when their privacy interests are balanced against the legitimate interest in combatting insurance fraud. This Court should dismiss the Complaint.

### B. Plaintiffs Fail To Plead The Elements Of A Publicity Given To Private Life Claim (Count One)

1. <u>The Complaint Does Not Identify any "Private Facts" Regarding Plaintiffs that are Stored and/or Sold by Verisk.</u>

To state a claim for publicity given to private life, Plaintiffs must plead facts that plausibly establish that any alleged publication "contained private facts." *Harris* 2021 WL 5933114, at *3. The Complaint does not plausibly allege this element.

Plaintiffs provide this Court with no information regarding the insurance claims they purportedly made during the limitations period. Without pleading the basic information regarding their insurance claims at issue, this Court cannot assess

23

whether Verisk tortiously publicized "private facts" about Plaintiffs. All of the Complaint's allegations on this point are conclusory in nature.

Moving beyond this pleading defect, Plaintiffs' publicity given to private life claim fails as a matter of law because Oklahoma permits the disclosure of nonpublic financial and health information—thereby negating any suggestion that said information constitutes "private facts." Okla. Admin. Code 365:35-1-32, -40. Furthermore, Plaintiffs' theory rests on the premise that Plaintiffs each disclosed their information to State Farm or another insurer, and that State Farm in turn disclosed that information to Verisk.[8] Accordingly, Plaintiffs cannot contend that Verisk publicized their "private" facts on ClaimSearch when Plaintiffs themselves disclosed said information to State Farm in connection with an insurance claim.

There is no merit to Plaintiffs' likely contention that policy numbers, social security numbers, or the generic information defined as "nonpublic personal information" under the GLBA constitutes "private facts" within the meaning of the Restatement (Second) of Torts § 652D. *See* Compl. ¶¶ 1, 37, 49-51.[9] Plaintiffs' self-

---

[8] Verisk hereby adopts State Farm's arguments in support of the dismissal of the invasion of privacy claims, including State Farm's argument that Plaintiffs consented to the disclosure of their information. *See* State Farm's Br. at 33 (discussing policy language).

[9] To be clear, Plaintiffs have not pleaded any factual material showing that their policy numbers, social security numbers, or any information within GLBA's definition of "nonpublic personal information" were stored and/or sold by Verisk.

serving definition of "Private Information" in the Complaint is not the same thing as "private facts" within the meaning of the common law.

Courts around the country have found that ordinary confidential information, such as social security numbers, do not constitute "private facts" within the meaning of this tort. "While personal information can include names and social security numbers, private facts are 'facially embarrassing and highly offensive if disclosed.'" *Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (quoting *Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 32 (Ill. App. 2010)); *see also Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1267 n. 8 (M.D. Fla. 2019) ("[A] social security number is not a 'private fact.'"); *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 2004) (explaining that "names, telephone numbers, addresses or social security numbers" are not private facts); *Meyerson v. Prime Realty Servs., LLC*, 796 N.Y.S.2d 848, 853 (N.Y. Sup. Ct. 2005) ("[T]ort claims relating to social security numbers . . . generally are found insufficient because . . . the information is not regarded as derogatory."). Plaintiffs do not allege the disclosure of any facially embarrassing or highly offensive private facts.

2.    <u>The Complaint Does Not Allege Facts that Plausibly Establish the "Publicity" Element of a Publicity Given to Private Life Claim.</u>

Plaintiffs fail to allege facts that plausibly establish the "publicity" element of this claim. "Publicity" requires proof that the private facts at issue have been

> made public, by communicating [them] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . The difference is not one of the means of communication . . . [but] one of a communication that reaches, or is sure to reach the public.

*Eddy v. Brown*, 71 P.2d 74, 78 (Okla. 1986) (alterations in original) (quoting *Restatement (Second) of Torts* § 652D).

The Complaint's allegations are sparse. Plaintiffs only allege that Verisk "compiles Plaintiffs' Private Information in a database that is analyzed, and the results are regularly sold to companies, governmental agencies, and individuals around the world for a wide range of reasons having nothing to do with adjusting the claim of the person whose Private Information is being sold." Compl. ¶ 19. According to Plaintiffs, "the inclusion of Plaintiffs' . . . Private Information in Verisk / ISO's databases is analogous to the publication of that information in a periodical – available to anyone willing to pay the price to access the database." *Id.* Plaintiffs further claim that "adjusters routinely secure Verisk / ISO reports, which include Private Information often, but not always, associated with the claimant." *Id.* ¶ 31.

26

Even if this Court assumes that the foregoing general assertions are true, they do not provide the Court with any information regarding whether a specific "compan[y], government agenc[y] [or] individual[]" actually purchased or viewed Plaintiffs' private information, or that these entities would not have been entitled to the information through other means.  Nor do Plaintiffs allege that any adjuster actually secured a report about Plaintiffs. The foregoing generalized allegations are insufficient to meet federal court pleading standards, and are entirely speculative. *Park v. Trican Well Serv., L.P.*, 2015 WL 4886992, at *3 (W.D. Okla. Aug. 17, 2015) (holding that the plaintiff's "contention that his personal information was revealed to 'hundreds or thousands of individuals' is merely speculative" and "does not satisfy *Twombly*'s plausibility requirement").

Even if Plaintiffs' private information were accessible by authorized law enforcement personnel and/or claims adjusters confirming claim information, such allegations are insufficient to constitute publicity under well-settled Oklahoma law. *See Phuong Nguyen v. Globe Life*, No. 18-cv-557, 2019 WL 208900, at *6 (W.D. Okla. Jan. 15, 2019) (holding that a "communication to law enforcement" and "a small group of individuals" is insufficient to constitute publicity); *Thomas v. City of Bartlesville, Okla.*, 2011 WL 5119518, at *4 (N.D. Okla. Oct. 28, 2011) (granting motion to dismiss where the plaintiff's personnel file was disclosed to co-employees

27

"for the purpose of making a personnel decision" and where there was "no basis to infer that the City made an improper disclosure of [the] plaintiff's personal information to the general public or communicated information about [the] plaintiff in such a way that it was likely to reach the general public"); *Taverna v. First Wave, Inc.*, 2010 WL 2902240, at * 4 (N.D. Okla. July 22, 2010) (granting motion to dismiss where the relevant statement was made to the "entire engineering staff" as opposed to the general public); *Eddy*, 715 P.2d at 78 (holding that there was no publicity where "only a small group of co-workers were made privy to [the plaintiff's] private affairs"); *see also Regions Bank v. Kaplan*, 2021 WL 4852268, at *13 (11th Cir. 2021) (affirming dismissal of invasion of privacy claim under Florida law on the basis that submission to secure online database designed to combat fraud "is not disclosure to the public at large or a disclosure that is substantially certain to become public knowledge").

Accordingly, the Court should dismiss Count One for failure to adequately plead the publicity requirement.

      3.      <u>Plaintiffs Fail to Adequately Plead the Lack of "Legitimate Concern to Others" Element of a Publicity Given to Private Life Claim</u>

"According to the Restatement (Second) of Torts, the 'legitimate public concern' requirement is based on the policy that the public has a proper interest in

learning about such matters." *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766, 782 (Okla. 1989). "In certain cases, it is appropriate for courts to decide as a matter of law whether a given matter is of legitimate concern to the public." *Judge v. Saltz Plastic Surgery, P.C.*, 367 P.3d 1006, 1013 (Utah 2016); *accord Anderson v. Suiters*, 499 F.3d 1228, 1236 (10th Cir. 2007).

As a matter of law, any storage and dissemination of Plaintiffs' information via ClaimSearch involves a matter of legitimate public concern to the relevant stakeholders in the insurance industry. Insurers, Verisk, regulators, prosecutors, adjusters, and others all access ClaimSearch to investigate insurance fraud and misconduct and to confirm claim information. Given the legitimate public concern at stake, Verisk is not liable for invasion of privacy as a matter of law. *See Regions Bank*, 2021 WL 4852268, at *13 (affirming dismissal of invasion of privacy claim under Florida law on the basis that disclosure of private information "in the context of preventing bank fraud through limited disclosure on a secure and limited network designed expressly for the purpose of preventing bank fraud . . . served the public interest"). Indeed, Oklahoma's statutory and regulatory exemptions that permit disclosure of claimants' private information, coupled with Oklahoma's civil immunity, reflect the judgment that reporting insurance claim information is a legitimate public concern.

**C.    Plaintiffs Have Not Alleged An Actionable "Intrusion" By Verisk In Order To State An Intrusion Upon Seclusion Claim (Count Two)**

To state an intrusion upon seclusion claim, Plaintiff must plead factual allegations that plausibly establish that Verisk intentionally committed "(a) a nonconsensual intrusion (b) which was highly offensive to a reasonable person." *Lockett v. Webco Indus., Inc.*, 2022 WL 1184040, at *3 (10th Cir. Apr. 21, 2022) (quoting *Gilmore*, 878 P.2d at 366). The Complaint lacks non-conclusory allegations in support of this cause of action.

Plaintiffs fail to state a claim because they do not allege that Verisk committed an actionable *intrusion*. "A person does not intrude on a plaintiff's seclusion simply by securing information about the plaintiff . . . and then publishing it. ***Publication alone is insufficient to constitute an intrusion upon seclusion***." *Anderson v. Blake*, 2005 WL 2716302, at *4 (W.D. Okla. Oct. 21, 2005) (emphasis added). This element of the invasion of privacy tort requires an "intentional interference with [Plaintiffs'] solitude or seclusion" by a trespassing party. *Id.* (quoting *Restatement (Second) of Torts* § 652B cmt. a (1977)); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003) (explaining that intent is required to establish liability).

Here, Plaintiffs explicitly analogize Verisk's conduct "to the *publication* of [their] information." Compl. ¶ 19. (emphasis added). Plaintiffs allege that "State Farm routinely discloses Plaintiffs' Private Information to [Verisk]," and that Verisk

30

only engages in the acts of "compil[ing] Plaintiffs' Private Information in a database" and granting additional third parties access to Verisk's database analytics. *Id.* Thus, Plaintiffs' own allegations undermine their claims.

*Anderson* illustrates how Plaintiffs' theory fails as a matter of law. In *Anderson*, the plaintiff sued a television network when it played video clips on the news of an alleged rape of the plaintiff. *See Anderson*, 2005 WL 2716302, at *1. The network sought information from a police officer, who provided the network with the videotape. *Id.* at *4. The *Anderson* court held that the playing of the video on the news (even if a publication) was "insufficient to state a claim for intrusion." *Id.* The court distinguished publication and intrusion, citing case law from around the country. *See id.* (citing, *inter alia*, *Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989) ("[T]he nature of this tort depends upon some type of highly offensive prying . . . not publication or publicity.")).

The same conclusion applies here. Plaintiffs allege that Verisk accepted Plaintiffs' Private Information from State Farm, and proceeded to maintain in its database, offer for sale, and publicize this information. *See* Compl. ¶¶ 19, 60. Plaintiffs do not allege any kind of "intrusion" into Plaintiffs' private affairs; at best, they allege publication alone. As in *Anderson*, the publication of information does

31

not satisfy the tort's intrusion element. [10] Because Plaintiffs fail to allege an actionable intrusion by Verisk, this Court should dismiss Count Two.

## III.  THE COURT MUST DISMISS THE COMPLAINT BECAUSE VERISK IS ENTITLED TO STATUTORY IMMUNITY

### A.  Verisk is Entitled to Immunity from Suit Pursuant to Oklahoma's Insurance Fraud Reporting Statute.

Okla. Stat. Ann. tit. 36, § 363(C) "provides immunity for those who report or provide information regarding suspected insurance fraud as long as they, themselves, do not act fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice in providing the information[.]" *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 420 (Okla. 2019). Specifically, this statute provides that

> No civil . . . cause of action of any nature shall exist against the person or entity by virtue of filing of reports or furnishing other information . . . concerning suspected,

---

[10] *Anderson*'s interpretation of "intrusion" is in accord with courts around the country. *See, e.g.*, *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("[A] plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion." (applying Illinois law)); *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 718 (4th Cir. 1991) ("The intrusion prong of invasion of privacy requires a positive act by a defendant, aside from publication, that encroaches on a plaintiff's seclusion." (applying Maryland law)); *Peterson v. Moldofsky*, 2009 WL 3126229, at *3 (D. Kan. Sept. 29, 2009) (applying Kansas law and holding that "the act of distribution does not constitute an intrusion sufficient to make out a claim invasion of privacy under the theory of intrusion upon seclusion"); *Barker v. Manti Telephone Co.*, 2009 WL 47110, at *3 (D. Utah Jan. 6, 2009) (applying Utah law and declaring that it is the "affirmative physical intrusion, eavesdropping, investigation, examination or prying that constitutes the tort, not any subsequent sharing of the information").

32

anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department . . . or to any other agency involved in the investigation or prosecution of suspected insurance fraud. The immunity provided in this subsection shall extend to the act of providing or receiving information or reports to or from:

1. Law enforcement officials, their agents and employees;

2. The National Association of Insurance Commissioners, any state department of insurance, any federal or state agency or bureau established to detect and prevent fraudulent insurance activities, as well as any other organization established for the same purpose, their agents, employees or designees; and

3. Any organization or person involved in the prevention and detection of fraudulent insurance activities or that organization or person's employees, agents, or representatives.

Okla. Stat. Ann. tit. 36, § 363(C).

Verisk's furnishing of information via ClaimSearch, an insurance fraud detection database, is subject to Oklahoma's civil immunity from suit. Verisk is a "person" who "furnish[es]. . . information . . . concerning suspected, anticipated or completed fraudulent insurance acts" to law enforcement personnel, state agencies, and other "organization[s] and person[s]" who are "involved in the prevention and detection of fraudulent insurance activities." Okla. Stat. Ann. tit. 36, § 363(C). In addition, this immunity extends to Verisk because it "provid[es] or receiv[es] information . . . to or from" law enforcement, fraud agencies, and insurers and claims

33

personnel "involved in the prevention and detection of fraudulent insurance activities." *Id.* The Oklahoma Insurance Code defines "Person" to include companies, insurers, corporations, and other entities. Okla. Stat. Ann. tit. 36, § 104. As such, Verisk's furnishing of information to insurers in the course of their investigation of insurance claims is encompassed by this civil immunity statute.

Nothing in the Complaint avoids the application of this statute. Although the Complaint alleges that Verisk is "profiting" from the information on ClaimSearch, *see* Compl. ¶¶ 1, 25, 61, there are no factual allegations indicating that Verisk's business practices were illegal or otherwise improper. In this case, there is an "obvious alternative explanation" for Verisk's business practices—its use of ClaimSearch for insurance fraud detection services—"which suggest[s] lawful conduct rather than the unlawful conduct [Plaintiffs] . . . ask the court to infer." *Doe*, 29 F.4th at 686 (quoting *Am. Dental Ass'n.*, 605 F.3d at 1290); *see also George v. Rehiel*, 738 F.3d 562, 585-86 (3d Cir. 2013) (citing *Am. Dental Ass'n*, 605 F.3d at 1290). Nor are there any allegations in the Complaint that suggest that Verisk's use of ClaimSearch was in bad faith. *Loven*, 452 P.3d at 420. This Court should dismiss the Complaint because Section 363(C) provides immunity to Verisk.

34

**B.** **Verisk is Entitled to Immunity Pursuant to § 230 of the Communications Decency Act**

Section 230 of the Communications Decency Act ("CDA") "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (quoting *Almeida v. Amazon, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)). More specifically, "a defendant must establish the following to obtain Section 230 immunity: (1) it is a provider or user of an interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; and (3) the challenged information has been provided by another information content provider." *Dennis v. MyLife.Com, Inc.*, 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021). "These three requirements look first to the defendant's status (i.e., are they a provider or user of an 'interactive computer service'), then to the kind of claim the plaintiff has brought (i.e., does the plaintiff treat the defendant as a publisher or speaker of information), and finally to the source of the information underlying the plaintiff's claim (i.e., who provided the information)." *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 119–20 (4th Cir. 2022). Verisk meets all three requirements.

Verisk meets the definition of an interactive computer service provider. Section 230 defines an interactive computer service as "any information service,

system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). "[C]ourts generally construe the terms 'interactive computer service' very broadly." *Dennis*, 2021 WL 6049830, at *6 (quoting *Smith v. Trusted Univ. Standards in Elec. Transactions, Inc.*, 2011 WL 900096, at *4 (D.N.J. Mar. 15, 2011)). In *Dennis*, this Court dismissed claims against a website operator that "publishe[d] information . . . concerning . . . an individual's criminal and civil court records, liens, judgments, income, property records, work history, and contact information," and "[b]ased on this information, . . . create[d] a 'Public Reputation Score'" for "creditor agencies or employers." *Id.* at *1. The Court held that defendant was a service provider because it "enables consumers to access and search through various databases on its website." *Id.* at *6.

*Dennis* fully applies here. The Complaint alleges that Verisk compiles insurance records that are submitted from insurers in its database, and provides that information to entities and agencies who agree to pay for access to the database. *See* Compl. ¶¶ 19, 31 (stating that "adjustors routinely secure Verisk / ISO reports . . . with a click of a mouse"). Thus, the first requirement for immunity is satisfied.

36

The second requirement—that Plaintiffs attempt to treat Verisk as publisher or speaker—is also readily established from the face of the Complaint. *See Dennis*, 2021 WL 6049830, at *6 ("[A]s Plaintiffs seek to hold Defendant liable for the 'exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter [a third party's] content,' their claims fall within Section 230's purview." (quoting *Obado v. Magedson*, 2014 WL 3778261, at *3 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015))). Indeed, the Complaint alleges that "the inclusion of Plaintiffs' and Class Members' Private Information in Verisk / ISO's databases is analogous to the publication of that information in a periodical . . . ." Compl. ¶ 19; *see also id*. ¶¶ 41, 60.

Lastly, the Complaint alleges that "the challenged information has been provided by another information content provider"—in this case, State Farm. *Dennis*, 2021 WL 6049830, at *5; *see also* 47 U.S.C. § 230(f)(3) (defining an "information content provider" as any "entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"). This Court should hold that Section 230 immunizes Verisk because Plaintiffs "seek[] to hold Defendant liable for publishing information on its website that originated from third parties." *Dennis*, 2021 WL 6049830, at *7.

37

## IV.   PLAINTIFFS ARE NOT ENTITLED TO THE REMEDY OF DISGORGEMENT AS A MATTER OF LAW

The "long-standing rule in Oklahoma is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1022 (Okla. 2013). Accordingly, "[d]isgorgement, being an equitable remedy, is unavailable when an adequate remedy at law exists." *Gardner Tanenbaum, LLC v. Benham Co., LLC*, 514 P.3d 68, 72 (Okla. Civ. App. 2022) (citing *Krug*, 320 P.3d at 1022-23). Such is the case here. This Court should dismiss Plaintiffs' claim for disgorgement.

"Adequacy of a remedy in this context is determined by whether the law provides a means for complete relief for a person with the type of claims [the plaintiff] is raising, *i.e.*, a *reasonable opportunity* to obtain the relief he seeks." *Dutton v. City of Midwest City*, 353 P.3d 532, 551 (Okla. 2015) (emphasis in original); *Hydro Turf, Inc. v. Int'l Fidelity Ins. Co.*, 91 P.3d 667, 673 (Okla. Civ. App. 2004) (dismissing equitable unjust enrichment claim on the basis that "an adequate remedy at law is available to [plaintiff] through its negligence claim"). There is no doubt that Plaintiffs have an adequate remedy at law for their invasion of privacy claims should they prevail at trial. Thus, this Court should dismiss the claim for disgorgement.

The Tenth Circuit, applying Oklahoma law, has stated that invasion of privacy claims provide an adequate remedy at law. *See Tillman v. Camelot Music, Inc.*, 408

38

F.3d 1300, 1309 n.9 (10th Cir. 2005) (citing *McCormack v. Okla. Pub. Co.*, 613 P.2d 737, 740 (Okla. 1980)). Further, the *Restatement (Second) of Torts* § 652H makes clear there are adequate remedies for invasions of privacy; namely, money damages:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for
>
> (a) the harm to his interest in privacy resulting from the invasion;
>
> (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
>
> (c) special damage of which the invasion is a legal cause.

*Id.*; *see also id.*, cmt. a ("A cause of action for invasion of privacy . . . entitles the plaintiff to recover damages for the harm to the particular element of his privacy that is invaded."). In addition, Oklahoma permits the recovery of compensatory damages should Plaintiffs meet their burden of proof at trial. Okla. Uniform Jury Instructions 28.16, *Invasion of Privacy – Measure of Damages* (2014) (permitting jury to "fix the amount of [the plaintiff's] damages" . . . that will reasonably and fairly compensate him/her for the injury sustained as a result of the invasion of privacy," including damages for "Financial losses," and "Mental anguish and suffering").

Plaintiffs thus have a "reasonable opportunity" to obtain complete relief via legal remedies in the form of mental distress and other damages proximately caused by the alleged invasion of their privacy. *Dutton*, 353 P.3d at 551. Indeed, Plaintiffs seek actual damages in their Complaint, or at the very least, decline to foreclose the

possibility that the trier of fact may award such damages. Plaintiffs assert that they "suffered *at least* nominal damages because their Private Information was publicly exposed, their legitimate claims were the improper bases for second-guessing subsequent claims that they might assert, [and] their policy premiums were increased . . . ." Compl. ¶ 56 (emphasis added).

Plaintiffs' reservation of an award of damages *beyond* nominal damages, including damages for increased premiums, is in accord with the Supreme Court's understanding of nominal damages as being "the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021). Courts agree that nominal damages are legal in nature. *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 529 (10th Cir. 2016) ("[A]n award of nominal damages involves a remedy that is 'legal,' not 'equitable.'"); *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999) (holding that "nominal damage award was legal in nature" and stating that "[t]his conclusion is consistent with rulings from other circuits that have expressly held that nominal damages are inherently a legal remedy"). This Court should dismiss the claim for disgorgement.

## CONCLUSION

Defendants respectfully request this Court grant their Motion to Dismiss.

ME1 44901120v.1

Dated: May 12, 2023

**MCCARTER & ENGLISH, LLP**

*/s/ Matthew G. Wapner*

Matthew G. Wapner, Esq.
Christoper A. Rojao, Esq.
Ryan M. Savercool, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
mwapner@mccarter.com
crojao@mccarter.com
rsavercool@mccarter.com

**MCCARTER & ENGLISH, LLP**

Kimberly C. Metzger, Esq. (to be
admitted *pro hac vice*)
880 West Monon Green Blvd., Ste. 101
Carmel, IN 46032
(973) 622-4444
kmetzger@mccarter.com

*Attorneys for Defendants,*
*Verisk Analytics, Inc. d/b/a ISO*
*ClaimSearch and Insurance Services*
*Office, Inc.*

41