## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Sharon Bycko; David Grubbs; Angela Killman-Anderson; Debra Lawless; Pamela S. Norton; and Jeremy Waller on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 3:23-cv-01316-MAS-TJB |
| v. | ) | |
| State Farm Mutual Automobile Insurance Company; Verisk Analytics, Inc. d/b/a ISO ClaimSearch; and Insurance Services Office, Inc., a subsidiary of Verisk, | ) ) ) ) ) ) | ***Document Filed Electronically***<br><br>**Returnable: August 7, 2023** |
| Defendants. | ) ) | |

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS <u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)</u>

Cari Dawson (pro hac vice)
Tiffany Powers (pro hac vice)
**ALSTON & BIRD, LLP**
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7000
cari.dawson@alston.com
tiffany.powers@alston.com

Steven L. Penaro
**ALSTON & BIRD, LLP**
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
steve.penaro@alston.com

*Counsel for Defendant State Farm Mutual Automobile Insurance Company*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND.....................................................................................3

PROCEDURAL BACKGROUND.............................................................................7

LEGAL STANDARD................................................................................................8

ARGUMENT.............................................................................................................9

I.     PLAINTIFFS DO NOT ADEQUATELY PLEAD ARTICLE
       III STANDING UNDER RULE 12(B)(1). ...........................................9

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE
       12(B)(6). ............................................................................................13

       A.     Any Alleged Transfer of Data by State Farm is
              Authorized Under Oklahoma Law and Plaintiffs'
              Policies. ..................................................................................13
              1.     Oklahoma Law Expressly Authorizes Disclosures
                     of Plaintiffs' Data .........................................................14
              2.     Plaintiffs Accepted State Farm's Terms Expressly
                     Disclosing Transmission of Data..................................18
       B.     Plaintiffs Fail to State a Claim for Breach of Contract............20
       C.     Plaintiffs Fail to State a Claim for Publicity of Private
              Facts .......................................................................................25
              1.     State Farm's alleged data sharing cannot be
                     "highly offensive" when it is expressly authorized
                     by law and their insurance policies. ..............................26
              2.     Plaintiffs do not allege that State Farm "published"
                     their private information.................................................28
              3.     State Farm's alleged transfer of data to Verisk and
                     ISO is of legitimate concern to others. ..........................31
       D.     Plaintiffs Fail to State a Claim for Intrusion Upon
              Seclusion ................................................................................32
              1.     State Farm Did Not "Intrude" to Collect Claimant
                     Information. ...................................................................32
              2.     State Farm's Alleged Sharing of Data is Not
                     Highly Offensive. ..........................................................35

E.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty......................................................................36

  1.  State Farm Does Not Owe a Fiduciary Duty to Insureds..........................................................36

  2.  State Farm Does Not Owe a Fiduciary Duty to Third-Party Claimants ....................................37

III.  PLAINTIFFS HAVE NOT PLED A RIGHT TO SEEK EQUITABLE RELIEF.........................................................39

AMENDMENT WOULD BE FUTILE...................................................40

CONCLUSION .................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. DMG Invs., LLC*,
No. 21-17442, 2023 U.S. Dist. LEXIS 4905 (D.N.J. Jan. 10, 2023) .................11

*Anderson v. Blake*,
No. CIV-05-0729-HE, 2005 U.S. Dist. LEXIS 25654 (W.D. Okla.
Oct. 21, 2005) ................................................................................................32, 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................8, 9

*Avenmo Ins. Co. v. White*,
1992 OK 147, 841 P.2d 588 ...............................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................8, 9, 10, 22

*BP Am., Inc. v. State Auto Property & Cas. Ins. Co.*,
2005 OK 65, 148 P.3d 832 .................................................................................24

*Cox v. Allstate Ins. Co.*,
No. CIV-07-1449-L, 2009 WL 2591673 (W.D. Okla. Aug. 19,
2009) ............................................................................................................23, 25

*Digital Design Gp., Inc. v. Info. Builders, Inc.*,
2001 OK 21 24 P.3d 834 ....................................................................................21

*Doe v. Univision TV Grp.*,
717 So. 2d 63 (Fla. Dist. Ct. App. 1998)............................................................30

*Eddy v. Brown*,
715 P.2d 74 (Okla. 1980)....................................................................................26

*Elk City Golf & Country Club, Inc. v. Phila. Indem. Ins. Co.*,
No. CIV-18-196-D, 2019 U.S. Dist. LEXIS 220910 (W.D. Okla.
Dec. 26, 2019)....................................................................................................14

iv

*Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare. Inc*.,
No. 06-CV-623-GKF-TLW, 2009 WL 702837 (N.D. Okla. Mar.
16, 2009) ....................................................................................................25

*Erickson v. Indep. Sch. Dist. No. 1-41*,
No. CIV-16-540-HE, 2016 U.S. Dist. LEXIS 162506 (W.D. Okla.
Nov. 23, 2016) ...........................................................................................22

*Erikson v. BP Expl. & Prod., Inc.*,
567 F. App'x 637 (10th Cir. 2014)...........................................................21

*Foley v. Medicredit, Inc.*,
No. 21-19764 (MAS) (DEA), 2022 U.S. Dist. LEXIS 135422
(D.N.J. July 29, 2022)................................................................................28

*Folger v. Navy Fed. Credit Union*,
No. 22-00198 (KM) (AME), 2022 U.S. Dist. LEXIS 201289
(D.N.J. Nov. 4, 2022).................................................................................24

*Gettle v. Liberty Nw. Ins. Corp*.,
No. CV 08-143-M-DWM, 2009 U.S. Dist. LEXIS 145723 (D.
Mont. Nov. 6, 2009)...................................................................................14

*Gilmore v. Enogex, Inc*.,
1994 OK 76, 878 P.2d 360 ........................................................................32

*Harris v. Oxbow Carbon LLC*,
No. CIV-20-505-J, 2021 U.S. Dist. LEXIS 243600 (W.D. Okla.
Apr. 12, 2021)............................................................................................29

*Institutional Inv'rs Grp. v. Avaya, Inc*.,
564 F.3d 242 (3d Cir. 2009) .......................................................................5

*Karupaiyan v. Shalimar Grp. of Rests.*,
No. 23-844 (SDW) (JBC), 2023 U.S. Dist. LEXIS 36636 (D.N.J.
Mar. 6, 2023), *appeal filed*, No. 23-1788 (3d Cir. May. 5, 2023).....................12

*Leslie v. Fielden*,
No. 10-CV-320-TCK-TLW, 2011 U.S. Dist. LEXIS 101493 (N.D.
Okla. Sep. 8, 2011) ...............................................................................26, 32

*Lewis v. Casey*,
518 U.S. 343 (1996)...................................................................................12

*Lockett v. Webco Indus.*,
No. 21-5041, 2022 U.S. App. LEXIS 10778 (10th Cir. Apr. 21,
2022) ........................................................................................................26, 35

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1991).....................................................................................9, 10

*Lungu v. Antares Pharma Inc.*,
No. 21-1624, 2022 U.S. App. LEXIS 2117 (3d Cir. Jan. 25, 2022) ..................12

*Mantooth v. Health Care Serv. Corp.*,
No. 20-CV-578-TCK-JFJ, 2021 WL 256803 (N.D. Okla. Jan. 25,
2021) ................................................................................................................22

*McCormack v. Okla. Publ'g Co.*,
613 P.2d 737 (Okla. 1980).............................................................................26

*McDermott v. Clondalkin Grp., Inc.*,
649 F. App'x 263 (3d Cir. 2016) ....................................................................11

*Mills v. Ethicon, Inc.*,
406 F. Supp. 3d 363 (D.N.J. 2019)..................................................................12

*Mitchell v. Hicks*,
No. 20-16031 (JXN) (ESK), 2021 U.S. Dist. LEXIS 199308
(D.N.J. Oct. 14, 2021).....................................................................................10

*Munley v. ISC Fin. House, Inc.*,
584 P.2d 1336 (Okla. 1978).......................................................................27, 33

*Murphy v. Spring*,
58 F. Supp. 3d 1241 (N.D. Okla. 2014)........................................................26, 32

*Myers v. All. for Affordable Servs.*,
371 F. App'x 950 (10th Cir. 2010)..................................................................23

*O'Linn v. Brown*,
No. CJ-2013-4679, 2014 Okla. Dist. LEXIS 4247 (Okla. Cnty.
Dist. Ct. Mar. 31, 2014)..................................................................................33

*Regions Bank v. Kaplan*,
Nos. 17-15478, 18-13220, 2021 U.S. App. LEXIS 31542 (11th Cir.
Oct. 19, 2021) .................................................................................................30

*Rohl v. Prof'l Fin. Co.*,
  Civil Action No. 21-17507 (MAS) (LHG), 2022 U.S. Dist. LEXIS
  96934 (D.N.J. May 31, 2022) ...............................................................28

*Romaine v. Kallinger*,
  537 A.2d 284 (N.J. 1988) ......................................................................28

*Ruther v. State Ky. Officers*,
  556 F. App'x 91 (3d Cir. 2014) ..............................................................8

*Salmon v. CRST Expedited, Inc.*,
  No. 14-CV-0265-CVE-TLW, 2016 U.S. Dist. LEXIS 670 (N.D.
  Okla. Jan. 4, 2016) ................................................................................32

*Scherer Design Grp., LLC v. Schwartz*,
  No. 18-3540, 2018 U.S. Dist. LEXIS 124287 (D.N.J. July 25,
  2018) .......................................................................................................28

*Setzer v. Farmers Ins. Co.*,
  185 F. App'x 748 (10th Cir. 2006) .........................................................35

*Sheeran v. Blyth Shipholding S.A.*,
  No. 14-5482, 2015 U.S. Dist. LEXIS 168019 (D.N.J. Dec. 16,
  2015) .......................................................................................................12

*Shields v. Prof'l Bureau of Collections of Md., Inc.*,
  55 F.4th 823, 829 (10th Cir. 2022) ........................................................30

*Shotts v. GEICO Gen. Ins. Co.*,
  943 F.3d 1304 (10th Cir. 2019) ..............................................................23

*Simmons v. Abruzzo*,
  49 F.3d 83 (2d Cir. 1995) ........................................................................8

*Simon* v. *E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ..................................................................................13

*Skypala v. Mortg. Elect. Registration Sys., Inc.*,
  655 F.Supp.2d 451 (D.N.J. 2009) ...........................................................24

*Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*,
  No. 19-4016, 2021 U.S. Dist. LEXIS 100337 (E.D. Pa. May 27,
  2021) .......................................................................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..................................................................................9, 20

*Syrus v. Bennett*,
    No. CIV-10-1116-D, 2011 U.S. Dist. LEXIS 42489 (W.D. Okla.
    Apr. 19, 2011)................................................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.,
    551 U.S. 308 (2007)..........................................................................................5

*Tilley v. Maier*,
    495 F. App'x 925 (10th Cir. 2012).................................................................18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................................9

*Wheeler's Meat Mkt., Inc. v. Travelers Cas. Ins. Co. of Am*.,
    No. 17-CV-523-M, 2017 WL 11557097 (W.D. Okla. Sept. 25,
    2017) ..............................................................................................................21

*Williams v. City of Tulsa*,
    393 F. Supp. 2d 1124 (N.D. Okla. 2005)........................................................26

*Wirtz v. Regalado*,
    No. 18-CV-0599-GKF-FHM, 2020 U.S. Dist. LEXIS 35959 (N.D.
    Okla. Mar. 2, 2020)........................................................................................26

## RULES

Fed. R. Civ. P. 8 ......................................................................................................8, 9

Fed. R. Civ. P. 12 ..................................................................................................9, 14

## STATUTES

12 Okla. Stat. § 3226(A)(2)(a) ...................................................................................27

36 Okla. Stat. § 307.1.................................................................................................16

36 Okla. Stat. § 307.2(B) ...........................................................................................16

36 Okla. Stat. § 363(c)(1)–(3).............................................................................15, 31

36 Okla. Stat. § 3621..................................................................................................19

45 C.F.R. § 164.502(a)...............................................................................28

**OTHER AUTHORITIES**

FBI, *Insurance Fraud*, https://www.fbi.gov/stats-
    services/publications/insurance-fraud...........................................2, 14

https://oklahoma.gov/okdhs/services/child-support-services/info-for-
    insurers.html.................................................................................15

N.J. Admin. Code 13:88-2.4 ......................................................................4

Okla. Admin. Code § 365:35-1-2 ..............................................................16

Okla. Admin. Code § 365:35-1-4 ..............................................................17

Okla. Admin. Code §§ 365:35-1-31 ...........................................................16

Okla. Admin. Code § 365:35-1-32(a)(3) ....................................................16

Okla. Admin. Code § 365:35-1-40(b)...................................................17, 18

Restatement (Second) of Torts............................... 25, 28, 29, 30, 33, 34

## **INTRODUCTION**

Plaintiffs,[1] who are Oklahoma residents, ask this Court to impose liability on insurer State Farm Mutual Automobile Insurance Company ("State Farm") for securely transmitting data in the ordinary course of the business of insurance to Defendants Verisk Analytics, Inc. d/b/a ISO ClaimSearch ("Verisk"), and Insurance Services Office, Inc. ("ISO")—conduct expressly authorized under Oklahoma law and Plaintiffs' State Farm policies.  Though this Complaint should be dismissed because Plaintiffs fail to allege sufficient facts to establish injury and causation, and therefore, fail to assert any plausible claims, to the extent Plaintiffs are found to have standing, all the claims fail because the challenged conduct is permissible under Plaintiffs' insurance contracts and legal under Oklahoma's insurance regulations.

Verisk and ISO provide routine reporting and fraud prevention services to insurers.  Oklahoma, like all other states, has a comprehensive statutory insurance framework that contemplates disclosure of insureds' data to insurance services providers, like Defendants Verisk and ISO, who help process claims and whose reporting services assist to identify and avoid fraud.  According to the Federal Bureau of Investigation, insurance fraud is a $40 billion-dollar-plus issue in the U.S.

---

[1] On May 5, 2023, Plaintiff David Grubbs voluntarily dismissed his claims without prejudice.  *See* ECF No. 18.

per year.[2]  Consumers benefit from the early detection and elimination of insurance fraud achieved by the disclosure of data.  State Farm's insurance policies, to which Plaintiffs each agreed, disclosed to the Plaintiff policyholders that data may be provided to State Farm's vendors for claims handling and other business purposes. Plaintiffs' theory that an unidentified transmission of their unspecified data at some indeterminate point in time to Verisk and/or ISO violates their privacy rights is without legal or factual support because it is premised upon a misreading of the Oklahoma insurance regulations and their own insurance policies and relies upon speculative, conclusory statements unsupported by any specific facts.

A cursory review of the Complaint reveals massive holes in Plaintiffs' factual pleading—including who Plaintiffs are and how they were injured—as well as speculation about general wrongdoing.  Plaintiffs allege breach of insurance contract, yet do not allege whether they were insureds of State Farm or what specific policy provision was breached.  Their conjecture of wrongdoing, without any facts, amounts to nothing more than guesswork in search of a viable legal theory.  But

---

[2] FBI, *Insurance Fraud*, https://www.fbi.gov/stats-services/publications/insurance-fraud.  "The Court may take judicial notice of information published to government websites on a motion to dismiss without converting it into a motion for summary judgment."  *Hafez v. Equifax Info. Servs., LLC*, No. 20-9019 (JXN) (JRA), 2023 U.S. Dist. LEXIS 56372, at *2 n.2 (D.N.J. Mar. 30, 2023).

there is none.  Plaintiffs' entire Complaint should be dismissed for at least the following independent reasons:

- Plaintiffs lack standing because they fail to plead facts connecting their individual data with the alleged transmission between State Farm and Verisk/ISO or any injury resulting from that transmission;

- Plaintiffs fail to state a claim for breach of contract because they do not attach, or even reference, the terms of the policies they allege were breached and, their judicially noticeable insurance policies preclude their theory;

- Plaintiffs fail to state a claim for publication of private facts because (1) the alleged transmission of data is authorized under Oklahoma law, and therefore not "highly offensive," and (2) there was no publication to a broad audience;

- Plaintiffs fail to state a claim for intrusion upon seclusion because they admit that State Farm sought personal data through legitimate means and for legitimate purposes;

- Plaintiffs fail to state a claim for breach of fiduciary duty because, under Oklahoma law, an insurer does not owe a fiduciary duty to an insured; and

- Plaintiffs cannot seek equitable relief where they otherwise have adequate remedies available.

## FACTUAL BACKGROUND

Plaintiffs do not allege basic facts that are a requirement of both notice pleading and Article III standing.  Namely, Plaintiffs make no allegations about how State Farm and Verisk and/or ISO interacted with them or what harm any Plaintiff experienced.  Nor do they plead what data of theirs was transmitted.  State Farm understands that Plaintiffs are Oklahoma residents who, though not specifically

plead, are insureds of State Farm.  The Complaint alleges that State Farm "or others" collect personal data to which State Farm is entitled to when assessing automobile insurance claims.  Compl. ¶¶ 4, 20.  Upon receiving data, State Farm uses such data for ratemaking and underwriting purposes.  *Id.* ¶ 19.

The crux of the Complaint, however, does not concern what State Farm does with data inhouse, but rather that it purportedly also shares that data with Verisk and/or ISO.  *See*, *e.g.*, Compl. ¶¶ 19–25.  The Complaint does not say which company (Verisk, ISO, or both) specifically receives data from State Farm.  But the Complaint is clear that Verisk and ISO are not random third parties.  ISO is "an insurance advisory and rating organization" created in 1971.[3]  *Id.* ¶ 7.  ISO is a wholly owned subsidiary of Verisk Analytics, Inc., which has been a publicly traded company since 2009.  *Id.*  As set forth in the Complaint, Plaintiffs assert claims in this lawsuit against Verisk and ISO doing business as "ISO ClaimSearch."  *Id.* ¶ 1.

ISO and Verisk are an integral part of the insurance industry.  Some state statutes *require* insurers to report claim information to Verisk and ISO.  *See e.g.*, N.J. Admin. Code 13:88-2.4 (requiring all insurers that write in excess of $2 million/year in direct auto insurance premiums to report all auto accidents involving bodily injury claims and auto physical damage greater than $2,000 to ClaimSearch

---

[3] Insurance rating organizations assist insurers in the making of insurance rates.

(Verisk)).  And those that do not require reporting nevertheless protect the reporting of claim information.  For example, as discussed below, Oklahoma provides immunity for insurance carrier reporting to entities like Verisk and ISO.  Plaintiffs' cited documents confirm Verisk's and ISO's key functions within the insurance industry.[4]  The Complaint attaches as exhibits[5] past iterations of Verisk's website, which states that Verisk "help[s] insurers make informed decisions about risk," Declaration of Steven L. Penaro ("Penaro Decl."), Ex. A, and that "[a]ll ISO Services are available to property/casualty insurers and reinsurers," *id.*, Ex. B.  Plaintiffs elsewhere reference Verisk's 2020 Form 10-K, (Compl. ¶ 10(c) n.8), which states that, in the insurance space, Verisk's "[i]nsurance segment primarily serves" property and casualty insurance customers—*not the general public*—for specific insurance-related functions, such as: compliance with state reporting requirements, fraud detection in insurance claims, evaluating and analyzing the risk in insuring people or assets (underwriting) and determining the price for insuring such risks (rating).  *See* Penaro Decl., Ex. C at pdf pg. 31–36.

---

[4] As a document incorporated by reference in the Complaint, the Court may assess the document without converting this motion to dismiss into a motion for summary judgment.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).

[5] Plaintiffs did not file a copy of the exhibits to their Complaint with the state court, but later sent State Farm's counsel the exhibits via email.  State Farm attaches those documents as Exhibits A and B to the Penaro Decl.

Outside of these exhibits, Plaintiffs do not factually plead what services or products ISO or Verisk provide to State Farm or specifically what they do for State Farm that has any potential nexus to Plaintiffs and their alleged data.[6]  The closest factual allegation of Verisk's and/or ISO's services to State Farm in the Complaint is a general assertion that insurance claim adjustors pull reports from Verisk and/or ISO containing private information that State Farm and other insurers sent to them in the past.  Compl. ¶ 31. The allegations relevant to Verisk and/or ISO's theoretical *use* of data are speculative and cannot be accepted as true, even for a motion to dismiss.  For example, Plaintiffs claim that, upon receiving personal data from State Farm, Verisk and/or ISO offer that data to "companies, government agencies, and individuals around the world" for reasons having "nothing to do with adjusting [an individual's insurance] claims."  *Id.* ¶ 19.  However, no facts make this bold claim plausible nor is it tethered to Plaintiffs' data.   And none of these speculative statements plausibly allege that State Farm engaged in any actionable wrongdoing.

---

[6] Plaintiffs instead generically reference trademarks indicating that ISO reserved product names for "compiling and analyzing data in the field of insurance," "providing information and analytics relating to insurance data, insurance claims, and insurance fraud," and "assisting with analysis of insurance information and detection of insurance fraud."  *See id.* ¶ 8(b) n. 6, n. 7.  Plaintiffs similarly reference Verisk's trademarks to indicate that the company offers services across a multitude of industries from insurance to agriculture, mining, energy, and geopolitics.  *Id.* at 8(b).  But the fact that Verisk and ISO drafted broad trademarks to include potential activities says nothing about whether they actually offer those services or the nature of how those services were offered, or any nexus to Plaintiffs or State Farm.

Furthermore, Plaintiffs fail to allege *who* Plaintiffs are, how they interacted with State Farm, or how they otherwise fit into the purported big data conspiracy alluded to in the Complaint.   Unconcerned with the Complaint's unsupported assertions and their connection to them, Plaintiffs employ a generalized pleading approach to assert claims for invasion of privacy against all defendants, as well as claims for breach of contract, and breach of fiduciary duty against State Farm specifically.  Plaintiffs' entire Complaint fails as a matter of law.

## PROCEDURAL BACKGROUND

On January 20, 2023, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County.  Plaintiffs immediately thereafter filed an Amended Complaint that was substantively identical to the original Complaint.[7]  State Farm removed the case to this Court on March 8, 2023.

Plaintiffs seek to represent a General Class of any person who initiated at least one insurance claim under an Oklahoma policy and regarding whom State Farm submitted Private Information to Verisk/ISO which Private Information was maintained in Verisk/ISO's database at the start of the class period.  Compl. ¶¶ 35-36.  Plaintiffs also seek to represent a third-party subclass of general class members

---

[7] On February 28, 2023, the State Court ordered that the original filed complaint "be removed from the Docket, as it inadvertently contains draft notations with attorney work product included."   State Farm refers to the Amended Complaint as the "Complaint" for purposes of this Motion.

who made at least one third-party insurance claim regarding an Oklahoma-based State Farm insurance policy and a first party subclass of general class members who made at least one first-party insurance claim regarding an Oklahoma-based State Farm insurance policy. *Id.* ¶ 36(a)-(b). State Farm brings this motion seeking dismissal of Plaintiffs' claims with prejudice.

## LEGAL STANDARD

Rule 8 requires complaints to feature "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should dismiss a complaint pursuant to Rule 8 when the complaint "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Ruther v. State Ky. Officers*, 556 F. App'x 91, 92 (3d Cir. 2014) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Even where a complaint meets Rule 8's low standards, Rule 12(b)(6) requires the complaint to contain sufficient factual matter, when accepted as true, to "state a claim to relief that is plausible on its face" and that "raise[s] a right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

## I.    PLAINTIFFS DO NOT ADEQUATELY PLEAD ARTICLE III STANDING UNDER RULE 12(B)(1).

Article III of the Constitution requires Plaintiffs to establish standing which, in turn, requires of allegations: "(i) that [Plaintiffs] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the [D]efendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). In short, "[i]f the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve" and the plaintiff lacks standing as a result. *Id.* Plaintiffs bear the burden of establishing standing. *Id.* at 2207.

Plaintiffs lack standing because they fail to allege an injury in fact personal to them caused by State Farm. Starting with the first element, an injury in fact is one that is (*i*) concrete, (*ii*) particularized, and (*iii*) "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1991)). A concrete injury is one that actually exists—it is real, not abstract. *Id.* at 340. "For an injury to be 'particularized,' it

'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). That is, Plaintiffs must connect the purported harm to themselves.

Here, the Complaint is devoid of any factual allegations of a harm personal to Plaintiffs. The Complaint simply alleges that Plaintiffs are Oklahoma residents whose private information "was reported, without their consent, by Defendant State Farm *or others* to one or more databases maintained by Verisk / ISO" and that Verisk and/or ISO thereafter shares that information to an unknown amount of people in a manner similar to a periodical. Compl. ¶¶ 4–5, 19 (emphasis added). But these allegations do not satisfy even the most liberal pleading standard under Rule 8. While Rule 8 requires only a "short and plain statement," "bare allegations" will not suffice. *Mitchell v. Hicks*, No. 20-16031 (JXN) (ESK), 2021 U.S. Dist. LEXIS 199308, at *5 (D.N.J. Oct. 14, 2021). Here there is no factual "showing" with respect to each Plaintiff. Instead, the Complaint is rife with "blanket assertions" that Plaintiffs' data ostensibly was collected, transferred, and sold. *See Twombly*, 550 U.S. at 555 n.3. Plaintiffs do not allege any potential injury; they do not allege what specific information State Farm provided to Verisk or ISO (or both), and they do not assert how this harmed them.

The sole exception is a vague reference to Plaintiff Killman-Anderson, who speculates that, "upon information and belief," State Farm has disseminated information to Verisk / ISO in violation of a protective order entered in another case,

*Angela Anderson (now Killman) v. Leslie Taylor*, Case No. CJ-2019-49.  Compl. ¶ 24.  But there are no factual allegations supporting this alleged scenario unique to Plaintiff Killman-Anderson.  While Plaintiffs can plead "upon information and belief," they must still "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Adams v. DMG Invs., LLC*, No. 21-17442, 2023 U.S. Dist. LEXIS 4905, at *13 (D.N.J. Jan. 10, 2023) (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016)).  Plaintiffs plead no facts indicating that State Farm actually disseminated Killman-Anderson's personal information.  The Court can and should disregard this singular Plaintiff's allegation accordingly.

Nor do Plaintiffs allege what Verisk and/or ISO did with *their* information. Plaintiffs do not allege any plausible facts that, upon receiving data from State Farm (or others), Verisk and/or ISO offered claimants' data for sale for reasons unrelated to legitimate operations, such as insurance claim processing.  Indeed, the documents upon which Plaintiffs rely lay bare the implausible nature of the Complaint. Plaintiffs' exhibits make clear that Verisk and ISO supply information to entities in the insurance space "to help insurers make informed decisions about risk."  *See* Penaro Decl., Ex. A.  And the Form 10-K Plaintiffs cites does not plausibly suggest that the insured data collected by Verisk and/or ISO is used in products for other industries.  "When an allegation in the complaint is contradicted by a document

incorporated in it by reference, the document controls and the allegation is not accepted as true." *Lungu v. Antares Pharma Inc*., No. 21-1624, 2022 U.S. App. LEXIS 2117, at *11 n.14 (3d Cir. Jan. 25, 2022).  Plaintiffs therefore fail to allege an injury in fact and that alone warrants dismissal of the Complaint.

As for the second element required to establish standing, Plaintiffs make no effort to trace their conclusory allegations to a specific Defendant.  While the Complaint offers *some* speculation as to State Farm's actions, it also claims "others" may have shared their information in the alternative, Compl. ¶ 4, and is replete with general references to "Verisk / ISO."  *See*, *e.g.*, Compl. ¶¶ 19, 31, 50, 52, 54. "Vague group pleadings," however, "do not meet the requirements of Rule 8." *Karupaiyan v. Shalimar Grp. of Rests.*, No. 23-844 (SDW) (JBC), 2023 U.S. Dist. LEXIS 36636, at *3 (D.N.J. Mar. 6, 2023), *appeal filed*, No. 23-1788 (3d Cir. May. 5, 2023).  Without specificity to each party's actions, the Complaint cannot "place Defendants on notice of the claims against each of them."  *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. 2019) (quoting *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482 (JBS/AMD), 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015)).

Nor does pleading a class action save Plaintiffs from establishing their own standing.  Plaintiffs must fall into the purported class of *injured* persons and cannot rely on allegations that others were injured.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class 'must allege and show that

they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Simon* v. *E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976)).  As a gating matter, the Complaint does not identify Plaintiffs' relationship with State Farm.  So, despite purporting to bring a class action with both "first party" and "third party" subclasses, Defendants are left guessing as to which subclass (if any) Plaintiffs claim they belong.  While Plaintiffs have alleged elsewhere a breach of contract claim, and each Plaintiff is or was a State Farm insured, Plaintiffs do not allege whether they made first-party or third-party claims.

For as much ink as Plaintiffs spill in the Complaint, none of it connects each of them to a specific injury caused by the defined acts of an individual defendant. For this reason alone, the Court should dismiss the Complaint for lack of standing.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6).

The Court should also dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6).

### A.    Any Alleged Transfer of Data by State Farm is Authorized Under Oklahoma Law and Plaintiffs' Policies.[8]

---

[8] Plaintiffs allege they are Oklahoma residents, Compl. ¶ 5, and cite Oklahoma law throughout their Complaint. *See, e.g.*, *id.* at 27–30.  For the purposes of this Motion only, and while reserving all rights to challenge the application of Oklahoma law if any part of this case survives, State Farm applies Oklahoma law, which bars Plaintiffs' claims. Their privacy claims also fail under the Restatement generally, which Oklahoma follows.  *See infra*, Section II.C.

Plaintiffs face two formidable gating issues.  First, Plaintiffs bring claims on the basis of data disclosures that are expressly authorized by state insurance regulators in order to facilitate underwriting, perform administrative duties related to insurance claims, prevent fraud, and perform other core insurance functions that inure to the benefit of both insurers and their insureds.  Second, and even more fundamental, Plaintiffs were clearly informed of State Farm's data practices, including the sharing of such data to third parties like Verisk and ISO.

### 1.   Oklahoma Law Expressly Authorizes Disclosures of Plaintiffs' Data

"The total cost of insurance fraud (non-health insurance) is estimated to be more than $40 billion per year," costing the average family between $400 and $700 a year in premiums.[9]  As the Complaint recognizes, Verisk's and ISO's services function as the tool insurers and regulators use to match claims and prevent fraud. *See* Compl. ¶ 8, nn.6, 7.  Various courts have recognized this fact as well.[10]

---

[9] FBI, *Insurance Fraud*, https://www.fbi.gov/stats-services/publications/insurance-fraud.

[10] *See*, *e.g.*, *Elk City Golf & Country Club, Inc. v. Phila. Indem. Ins. Co.*, No. CIV-18-196-D, 2019 U.S. Dist. LEXIS 220910, at *7 n.1 (W.D. Okla. Dec. 26, 2019) ("ISO ClaimSearch database is an insurance fraud detection system owned by the Insurance Services Office. It contains detailed records of losses paid from participating insurers. Insurance companies can become a member of ISO and send claims information to ISO to check whether similar claims have been filed with other insurance companies."); *Gettle v. Liberty Nw. Ins. Corp.*, No. CV 08-143-M-DWM, 2009 U.S. Dist. LEXIS 145723, at *8 n.2 (D. Mont. Nov. 6, 2009) (describing an "Iso ClaimSearch Match Report" as a product "designed to assist claims adjusters in preventing fraud by tracking all the claims made by an individual among all

Indeed, states regularly reference and even require use of ISO across various fields.  Oklahoma's government website, for example, references using ISO Claim Search in order to comply with a statute that requires insurance companies paying a personal injury, wrongful death, or workers' compensation claim in excess of $500 to determine if the claimant owes past due child support before paying the claim.[11]

To support efforts to prevent insurance fraud, Oklahoma grants insurers immunity from civil torts if they provide information to law enforcement, the National Association of Insurance Commissioners, the state insurance department, or **"[*a*]*ny* organization . . . involved in the prevention or detection of fraudulent insurance activities**."  36 Okla. Stat. § 363(c)(1)–(3) (emphasis added).  State Farm's transmission of data to Verisk / ISO clearly falls within this statutory grant of immunity and thus cannot form the basis of a plausible claim against State Farm.

Oklahoma law goes even further and explicitly allows this transfer of data *without* requiring an individual's consent.  Both GLBA and Oklahoma's implementing regulations explicitly permit the disclosure of non-public personal information for insurance fraud investigative purposes.[12]  Insurers are expressly

---

participating insurers."); *Solano-Sanchez v. State Farm Mut. Auto Ins. Co*., No. 19-4016, 2021 U.S. Dist. LEXIS 100337, at *8 n.1 (E.D. Pa. May 27, 2021) (same).

[11]https://oklahoma.gov/okdhs/services/child-support-services/info-for-insurers.html.

[12] Plaintiffs note Oklahoma's Insurance Code broadly proclaims that "No Person Shall Disclose Any Nonpublic Personal Information Contrary to the Provisions of

permitted to disclose nonpublic financial information (without any requirement to provide notice of such disclosure, obtain the customer's consent or provide the customer with an opportunity to opt out of such disclosures) in order to: underwrite insurance,[13] prevent fraud,[14] or "provide information to insurance rate advisory organizations . . .," for example.[15]   Similar exceptions exist for the disclosure of personal health information.   Oklahoma's code is clear that consumer consent is *not* required "for the disclosure of nonpublic personal health information by a licensee," such as State Farm, "for the performance of the . . . insurance functions by *or on behalf of* [State Farm] or [its] affiliate," such as: "claims administration; claims adjustment and management; detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity; underwriting; policy placement or issuance; loss control [or risk management]; [and] ratemaking and

---

Title V of the Gramm-Leach-Bliley Act of 1999, Public Law No." 36 Okla. Stat. § 307.2(A).   The code then confers to the Oklahoma Insurance Commissioner the power to implement rules to effectuate that proclamation.  36 Okla. Stat. § 307.2(B); *see also* 36 Okla. Stat. § 307.1.  The commissioner promulgated privacy standards for "the treatment of nonpublic personal health information and nonpublic personal financial information about individuals by all licensees of the state insurance department."  Okla. Admin. Code § 365:35-1-2.

[13] Okla. Admin. Code §§ 365:35-1-31(a), 365:35-1-31(b)(2)(E), 365:35-1-31(a)(2).

[14] *Id.*

[15] Okla. Admin. Code § 365:35-1-32(a)(3).

guaranty fund functions" designed to protect policyholders if an insurer becomes insolvent.  Okla. Admin. Code § 365:35-1-40(b) (emphasis added).

Plaintiffs admit that ISO is "an insurance advisory and rating organization" and Verisk is a "risk assessment firm."  Compl. ¶¶ 7–8.  And per the Complaint, Verisk's databases are trademarked to prevent insurance fraud and abuse, (Compl. ¶ 8(b) n. 6, 7), and adjustors "routinely secure Verisk/ISO reports" when adjusting insurance claims, Compl. ¶ 31.  Thus, even if State Farm did not provide notice for its disclosure of personal information to Verisk and/or ISO, which it did, such disclosures clearly fall within Oklahoma's enumerated statutory exceptions.

Furthermore, Oklahoma's statutory scheme expressly contemplates the disclosure of data by licensees,[16] like State Farm, to third parties, like Verisk and ISO, who engage in claims administration, policing fraud, and underwriting on behalf of the licensee.  Okla. Admin. Code § 365:35-1-40(b).  While Plaintiffs cited to Oklahoma's Insurance Code, they overlooked both the statutory immunity and other expressly enumerated code exemptions that facially apply here.

---

[16] "'Licensee' means all licensed insurers, producers and other persons licensed or required to be licensed, or authorized or required to be authorized, or registered or required to be registered pursuant to the Insurance Law of this state."  Okla. Admin. Code § 365:35-1-4 (17)(A).  Plaintiffs admit that State Farm provides insurance in Oklahoma.  Compl. ¶ 6.

### 2.   Plaintiffs Accepted State Farm's Terms Expressly Disclosing Transmission of Data

State Farm's judicially noticeable insurance policies provided notice to Plaintiffs that their data would be shared.  Plaintiffs assented to those data sharing practices via their insurance policies, and they do not and cannot contend otherwise.

As explained below, Plaintiffs failed to attach or allege the terms of the contracts State Farm purportedly breached, necessitating dismissal of their breach of contract claim.[17]  Plaintiffs' decision to ignore their written policy agreements with State Farm is likely no accident, as the express terms of those agreements—which this Court may consider on a motion to dismiss—bar Plaintiffs' claims.  *Tilley v. Maier*, 495 F. App'x 925, 927 (10th Cir. 2012).

Plaintiffs Bycko, Killman, Lawless, Waller, and Norton insured their vehicles with State Farm under insurance policies consisting of a declarations page, Policy Booklet Form 9836A, and applicable endorsements, including Amendatory Endorsement 6128AP ("6128AP").  *See* Declaration of Jonathan Owen ("Owen Decl."), ¶¶ 3-15, Exs. 1-10, including a certified copy of Plaintiff Bycko's Policy, attached as Ex. 1; Penaro Decl., ¶ 9.  6128AP includes a provision titled State Farm's "Rights Regarding Claim Information" that informs insureds that State Farm "will collect, receive, obtain, use, and retain" "records, receipts, invoices medical bills,

---

[17] *See infra* Section II.B.

medical records, wage information, salary information, employment information, data" as well as "any other information [State Farm has] in [its] possession as a result of [State Farm's] processing, handling, or otherwise resolving claims submitted under [the] policy" in "accordance with applicable federal and state laws and regulations and consistent with the performance of [State Farm's] business functions." Owen Decl., Exs. 1-10, 6128AP at p. 6. Importantly, each Plaintiff's policy provides that State Farm "will not be restricted in or prohibited from" collecting, receiving, obtaining, using, or retaining such information and "**may disclose**" any of this information:

(1)  to enable performance of [State Farm's] business functions;
(2)  to meet [State Farm's] reporting obligations to insurance regulators;
(3)  to meet [State Farm's] reporting obligations to insurance data consolidators;
(4)  to meet other obligations required by law; and
(5)  as otherwise permitted by law.

*Id*. (emphasis added).[18]  Plaintiffs were clearly informed that State Farm may disclose their data to perform its business functions, report to insurance data consolidators such as Verisk / ISO, or as otherwise permitted by Oklahoma law,

---

[18]  The policy and basic contract law provide that all the endorsements and amendments thereto form the agreement. *See* 36 Okla. Stat. § 3621 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy."); *see e.g.*, Owen Decl., Ex. 1, Declarations Page at p. 1 (stating Ms. Bycko's policy include declaration pages, the policy booklet, Form 9836A and any endorsements that apply).

which covers the types of disclosures vaguely pleaded in the Complaint.  Plaintiffs cannot retroactively object to such information sharing practices and are foreclosed as a matter of law from bringing claims against State Farm premised on sharing information with Verisk / ISO.

**B.      Plaintiffs Fail to State a Claim for Breach of Contract.**

The Complaint does not come close to pleading the essential elements of a contract claim.  Plaintiffs fail to allege the nature of their relationship with State Farm or the terms of any contract governing such relationship.  While Plaintiffs purport to bring a breach of policy claim on behalf of "all First Party Plaintiffs and Subclass members" who were "issued at least one insurance policy by State Farm during the Class Period," Compl. ¶ 66, they fail to allege they were issued at least one policy by State Farm during the Class Period.  Further, the Complaint is bereft of any allegation as to what insurance contract they had with State Farm, when such policy was in effect, what the terms of the policy were, what specific policy terms were breached, or how Plaintiffs were damaged as a result of that breach.  *Spokeo*, 136 S. Ct. at 1547 n.6 ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.").

Plaintiffs' silence as to the insurance contracts State Farm purportedly breached speaks volumes and mandates dismissal of their breach of contract claim.

*See Erikson v. BP Expl. & Prod., Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014) (affirming dismissal because "[t]he second amended complaint is devoid of any factual allegations to demonstrate any agreement" between the parties).  This is because, to state a breach of contract claim, a plaintiff must plead facts demonstrating (*i*) the formation of a contract, (*ii*) a breach of that contract, and (*iii*) damages Plaintiffs incurred as a result of the breach.  *Digital Design Gp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33 24 P.3d 834, 843.  If "merely conclusory allegations" fail to establish a claim, so too does an utter lack of allegations.  *See Wheeler's Meat Mkt., Inc. v. Travelers Cas. Ins. Co. of Am*., No. 17-CV-523-M, 2017 WL 11557097, at *2 (W.D. Okla. Sept. 25, 2017) (dismissing breach of contract claim that was based on "merely conclusory allegations" because such allegations are "insufficient to state a claim upon which relief may be granted").

Courts applying Oklahoma law consistently dismiss breach of contract claims against insurers where, like here, the plaintiff merely alleges in a conclusory manner that the insurer breached a policy.  In *Ruffin v. State Farm Fire & Casualty Company*, the petition alleged that State Farm "breached its contractual obligations under the terms and conditions of the insurance contract . . . by failing to pay all benefits owed."  No. CIV-14-1071-F, 2014 WL 12730326, at *1 (W.D. Okla. Dec. 16, 2014).  The court dismissed the claim and held that, because plaintiff failed to specifically identify the benefits that he was allegedly entitled to under the policy,

the allegations were "merely consistent with unlawful conduct or the possibility of unlawful conduct and [we]re insufficient." *Id*. (citing *Twombly*, 550 U.S. at 566-69). The Northern District of Oklahoma similarly dismissed a breach of contract claim where the plaintiff generally alleged the insurer "ow[ed] [the insured] benefits and obligations under the terms and conditions of [a] policy" and "wrongfully denied insurance coverage benefits." *Mantooth v. Health Care Serv. Corp.*, No. 20-CV-578-TCK-JFJ, 2021 WL 256803, at *2 (N.D. Okla. Jan. 25, 2021) (finding these "merely conclusory allegations" were insufficient to state a plausible breach of contract claim under Oklahoma law). Though these cases were properly dismissed, the plaintiffs in those cases pleaded far more than Plaintiffs here.

For their contract claim, Plaintiffs aver that State Farm breached insurance policies (presumably Plaintiffs' policies) by "disclos[ing]the Private Information of the First Party Subclass without securing their consent" because "all insurance policies incorporate a policy of good faith and fair dealing" and State Farm "must secure consent from its insureds" before it can disclose such information. Compl. ¶¶ 67-69. These assertions do not save Plaintiffs' claim because they are "vague, conclusory, and deficient as a matter of law." *See Mantooth*, 2021 WL 256803, at *2; *Erickson v. Indep. Sch. Dist. No. 1-41*, No. CIV-16-540-HE, 2016 U.S. Dist. LEXIS 162506, at *4-6 (W.D. Okla. Nov. 23, 2016) (dismissing a breach of contract claim for failing to plead specific facts upon which relief can be granted); *Myers v.*

*All. for Affordable Servs*., 371 F. App'x 950, 959 (10th Cir. 2010) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Plaintiffs do not identify any contractual term barring such alleged disclosure or even allege that the contracts at issue required State Farm to obtain their consent prior to disclosing information.

That Plaintiffs allege the phrase "good faith and fair dealing" does not obviate the requirement that they actually plead a claim tethered to their insurance contracts. Violations of an insurer's duty to act in good faith and deal fairly under Oklahoma law give rise to a separate action in tort, in which courts consider (1) whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of a claim and (2) if there is a legitimate dispute, whether the plaintiff can demonstrate bad faith. *Shotts v. GEICO Gen. Ins. Co*., 943 F.3d 1304, 1315 (10th Cir. 2019). Plaintiffs' dispute here does not relate to coverage or the value of Plaintiffs' insurance claims. Plaintiffs cannot shoehorn a bad faith claim into their breach of contract cause of action premised on the disclosure of information only when they are completely untethered to any policy term or coverage dispute. The sparse allegations in the Complaint do not come close to meeting the notice pleading requirements of Federal Rule 8. *See Cox v. Allstate Ins. Co*., No. CIV-07-1449-L, 2009 WL 2591673, at *2-3 (W.D. Okla. Aug. 19, 2009) (allegations that insurer "intentionally and with malice breached its duty to deal fairly and in good faith with

its insureds," that it "failed to advise Plaintiffs of all policy benefits to which they . . . were entitled," and that its conduct "constitutes bad faith" were "simply legal conclusions with no factual underpinning" and were therefore insufficient to state a claim under Federal Rule 8); *Syrus v. Bennett*, No. CIV-10-1116-D, 2011 U.S. Dist. LEXIS 42489, at *8 (W.D. Okla. Apr. 19, 2011) (granting motion to dismiss because plaintiff failed to plead sufficient facts to support a plausible claim for relief).[19]

Not only do Plaintiffs fail to state a claim based on their deficient pleading, but their judicially noticeable insurance policies explicitly demonstrate that they accepted State Farm's terms, which include the very alleged practices vaguely challenged in the Complaint.  As explained in Section II(A)(2), State Farm located Plaintiffs in their system and determined, on the face of their insurance contracts, that Plaintiffs accepted terms and conditions expressly disclosing State Farm's transmission of their data under their respective insurance policies.  "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." *BP Am., Inc. v. State Auto Property & Cas. Ins. Co.*, 2005 OK 65, ¶6,

---

[19] *See also Folger v. Navy Fed. Credit Union*, No. 22-00198 (KM) (AME), 2022 U.S. Dist. LEXIS 201289, at *8-9 (D.N.J. Nov. 4, 2022); *Skypala v. Mortg. Elect. Registration Sys., Inc.*, 655 F.Supp.2d 451, 459 (D.N.J. 2009) (dismissing claim where "the Complaint does not identify the provisions Plaintiff asserts were breached").

-24-

148 P.3d 832, 835.  Courts apply the contract as written.  *Id*.; *see also Avenmo Ins. Co. v. White*, 1992 OK 147, ¶ 9, 841 P.2d 588, 590 ("[W]e will not rewrite the policy's terms simply because doing so would favor the insured.").  Here, State Farm's policies are clear and unambiguous.  State Farm's disclosure of information to Verisk / ISO does not breach any provision of the policy but is instead expressly *permitted*.  *See* Owen Decl., Exs. 1-10, 6128AP at p. 6.  Because State Farm is permitted to disclose information to Verisk / ISO under the Plaintiffs' insurance policies, the Complaint fails to state a claim for breach of contract.  *See Cox*, 2009 WL 2591673, at *2-3 (plaintiffs could not state a claim for breach of contract because the insurance policy specifically permitted insurer to engage in the challenged conduct); *Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare. Inc*., No. 06-CV-623-GKF-TLW, 2009 WL 702837, at *3 (N.D. Okla. Mar. 16, 2009) (plaintiff failed to state a claim for breach of contract because the allegations of breach were "directly and dispositively contradicted by the terms of the contract").

## C.    Plaintiffs Fail to State a Claim for Publicity of Private Facts

Plaintiffs cannot transform State Farm's alleged sharing of data with Verisk and/or ISO into an actionable claim for publicity of private facts.  Oklahoma follows the Restatement (Second) of Torts,[20] which requires a plaintiff to plead (*i*) public

---

[20] Under the Restatement, there are four potential "invasion of privacy" claims: "1) unreasonable intrusion upon the seclusion of another, 2) appropriation of the other's name or likeness, 3) unreasonable publicity given to the other's private life, and 4)

disclosure of private facts that (*ii*) was highly offensive to a reasonable person and (*iii*) not of legitimate concern to others. *McCormack v. Okla. Publ'g Co.*, 613 P.2d 737, 740-41 (Okla. 1980); *Eddy v. Brown*, 715 P.2d 74, 78 (Okla. 1980)). Plaintiffs cannot plausibly allege that *any* of these elements have been satisfied.

      1.    <u>State Farm's alleged data sharing cannot be "highly offensive" when it is expressly authorized by law and their insurance policies.</u>

Oklahoma law is clear that invasion of privacy torts "are reserved for extreme conduct." *Leslie v. Fielden*, No. 10-CV-320-TCK-TLW, 2011 U.S. Dist. LEXIS 101493, at \*11-12 (N.D. Okla. Sep. 8, 2011) (citing *Munley v. ISC Fin. House, Inc.,* 584 P.2d 1336, 1338 (Okla. 1978)). It follows that State Farm's alleged disclosure of data to Verisk cannot amount to conduct "highly offensive" to a reasonable person when it is expressly authorized by Oklahoma law and Plaintiffs' insurance policies. *See Lockett v. Webco Indus.*, No. 21-5041, 2022 U.S. App. LEXIS 10778, at \*11 (10th Cir. Apr. 21, 2022) (holding that conduct monitoring a drug test is not highly offensive when authorized by law).

As a preliminary matter and as discussed above, Plaintiffs lack standing to pursue a claim that *their* data was shared. *See Wirtz v. Regalado*, No. 18-CV-0599-

---

publicity that unreasonably places the other in a false light." *Williams v. City of Tulsa*, 393 F. Supp. 2d 1124, 1131 (N.D. Okla. 2005); *Murphy v. Spring*, 58 F. Supp. 3d 1241, 1263-64 (N.D. Okla. 2014). Plaintiffs only allege claims for intrusion upon seclusion and publicity of private life. Compl. ¶¶ 47–64.

GKF-FHM, 2020 U.S. Dist. LEXIS 35959, at *41 (N.D. Okla. Mar. 2, 2020) (dismissing disclosure claim where the plaintiff failed "to identify any specific private medical information" that was disclosed).   Next, the alleged disclosure of data to Verisk and/or ISO is not extreme conduct—Plaintiffs' policies, the terms of which they agreed to, disclose State Farm's data sharing practices.  *See* Owen Decl., Exs. 1-10, 6128AP at p. 6.  Moreover, Plaintiffs' scattershot allegations with citation to provisions of Oklahoma law and HIPAA do not provide either the factual or legal substance to establish that the alleged data sharing was offensive in nature.  Plaintiffs attempt to illustrate the offensive nature of State Farm's disclosure of information by claiming such a disclosure violates: (*i*) Oklahoma's Discovery Code, 12 Okla. Stat. § 3226(A)(2)(a); (*ii*) HIPAA, a federal regulatory framework applicable to covered entities (health plans, clearinghouse, and health care providers) and their business associates that protects PHI; (*iii*) the GLBA, a federal statute applicable to Financial Institutions governing privacy and data security; and (*iv*) Oklahoma's statute implementing the GLBA.  None supports Plaintiffs' claims that their allegations of sharing, even if true, are offensive.

First, Plaintiffs' citation to Oklahoma's discovery code is plainly erroneous. It simply authorizes a defendant (or its insurer) access to the plaintiff's "relevant medical records and bills, and, when relevant, a release or authorization for employment and scholastic records."  12 Okla. Stat. § 3226(A)(2)(a).  It is not a

prohibitory statute.   Second, Plaintiffs' citation to HIPAA is likewise plainly erroneous and irrelevant because State Farm as an auto insurer is not a "covered entity" or otherwise subject to HIPAA.   *See*, *e.g.*, 45 C.F.R. § 164.502(a).   Instead, insurers in automobile accidents are typically governed by GBLA.   And third, as shown above, the GBLA and Oklahoma statutory framework implementing the GBLA expressly authorizes the transmission of Plaintiffs' data without consent to Verisk / ISO.   *See supra*, Section II(A)(1).

2.   <u>Plaintiffs do not allege that State Farm "published" their private information.</u>

Plaintiffs' claim for publication of private facts also fails because they do not allege that State Farm *published* personal information.   Courts (including this one) have repeatedly stressed that plaintiffs must plead a publication—that is, a *public* disclosure—of their private information.   *See Foley v. Medicredit, Inc.*, No. 21-19764 (MAS) (DEA), 2022 U.S. Dist. LEXIS 135422, at *7 (D.N.J. July 29, 2022) ("[P]ublication is critical to establishing this traditional harm."); *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 U.S. Dist. LEXIS 124287, at *13-14 (D.N.J. July 25, 2018); *Rohl v. Prof'l Fin. Co.*, Civil Action No. 21-17507 (MAS) (LHG), 2022 U.S. Dist. LEXIS 96934, at *8 (D.N.J. May 31, 2022).[21]   Even so, not

---

[21] New Jersey recognize causes of action for publication of private facts and, like Oklahoma, New Jersey models the claim after the Restatement (Second) of Torts. *Romaine v. Kallinger*, 537 A.2d 284, 290 (N.J. 1988).

every disclosure or transmission of private information supports a publication claim. "'Publicity' means that the matter is made public, by communicating it to the public at large, *or* to so many persons that the matter must be regarded as ***substantially certain*** to become one of public knowledge" *Harris v. Oxbow Carbon LLC*, No. CIV-20-505-J, 2021 U.S. Dist. LEXIS 243600, at *7 (W.D. Okla. Apr. 12, 2021) (emphasis added) (quoting Restatement (Second) of Torts, § 652D cmt. a) (1977). The Court's inquiry is whether the purported communication is one "that reaches, ***or is sure to reach*** the public." *Id.* (emphasis added).

Here, Plaintiffs do not and cannot allege that State Farm made a public disclosure of private facts. Instead, Plaintiffs allege State Farm disclosed private facts to a maximum of two entities: Verisk and ISO. *See* Compl. ¶ 50. Such a disclosure does not constitute disclosure to the public at large. It is not akin to submitting an article to run in a periodical. The only plausible reading of the Complaint is that Verisk / ISO run a protected database accessible to a limited audience in the insurance industry, such as claim adjusters. *See* Compl. ¶ 31. This is supported and endorsed by Oklahoma's immunity statute that contemplates disclosure to law enforcement and organizations like Verisk/ISO for fraud prevention. Nor are there any allegations plausibly showing State Farm directed or agreed to any further dissemination by Verisk / ISO. *Id.* While Plaintiffs state in a conclusory manner that "Verisk / ISO publicly offer[ed] [Plaintiffs' data] for sale,"

Compl. ¶ 50, they do not allege any facts to make this claim plausible.  *See supra*,

Section I.

The facts of this case mirror *Regions Bank v. Kaplan*, where the Eleventh

Circuit affirmed dismissal of a claim very similar to Plaintiffs' public disclosure of

private facts claim. The court confirmed a Florida[22] district court's finding that a

bank's disclosure of private information to a third-party's protected database to

combat financial crime did *not* amount to a *public* disclosure:

> The district court took judicial notice of the fact that Fraud-Net is "a
> dynamic, secured, online database created to help financial institutions
> and law enforcement in the fight against financial crime," and that
> "[o]nly banks, credit unions and law enforcement agencies may register
> for 'Fraud-Net.' Because 'Fraud-Net'" is both secured and restricted to
> limited membership, a submission to Fraud-Net is not a disclosure to
> the public at large or a disclosure that is substantially certain to become
> public knowledge.

*Regions Bank v. Kaplan*, Nos. 17-15478, 18-13220, 2021 U.S. App. LEXIS 31542,

at *39-40 (11th Cir. Oct. 19, 2021); *see also Shields v. Prof'l Bureau of Collections*

*of Md., Inc.*, 55 F.4th 823, 829 (10th Cir. 2022) (disclosure of debt to third party

mailer is not a public disclosure).  Case law thus holds that the disclosure of

information for fraud prevention and collection services is not a cognizable

publication.  The Court should find the same here and dismiss Plaintiffs' public

---

[22] Like Oklahoma and New Jersey, Florida follows the Restatement (Second) of
Torts when analyzing claims for public disclosure of private facts.  *See Doe v.*
*Univision TV Grp.*, 717 So. 2d 63, 64 (Fla. Dist. Ct. App. 1998).

disclosure of private facts claim accordingly.

       3.    <u>State Farm's alleged transfer of data to Verisk and ISO is of
legitimate concern to others.</u>

Understanding Oklahoma's explicit approval of sharing claimants' personal information, as well as the limited scope of State Farm's purported disclosure, it is obvious that the sharing of this information is of legitimate concern to others.  As noted above, Oklahoma's insurance regulations encourage a flow of data to detect and prevent insurance fraud and aid in the underwriting and rate making process. And Oklahoma law accordingly grants immunity from civil torts for providing information to law enforcement, the National Association of Insurance Commissioners, the state insurance department, or "[*a*]*ny* organization . . . involved in the prevention or detection of fraudulent insurance activities."  36 Okla. Stat. § 363(C)(1)–(3) (emphasis added).  Verisk is an organization involved in the detection and prevention of fraud.  These Oklahoma Plaintiffs cannot attempt to limit the flow of data currently used to detect and prevent fraud.  Doing so would contravene the Oklahoma insurance regulatory scheme.   Even outside of the fraud context, Oklahoma has an interest in the dissemination of data for underwriting and rate making.  For these reasons, Plaintiffs fail to establish multiple elements of their attempted public disclosure claim, even accepting their factual allegations as true.

**D.    Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion**

Plaintiffs' intrusion upon seclusion claim against State Farm is even less tenable.  To successfully plead this claim, Plaintiffs must allege two elements: "(1) a nonconsensual intrusion (2) that was highly offensive to a reasonable person." *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVE-TLW, 2016 U.S. Dist. LEXIS 670, at *13-14 (N.D. Okla. Jan. 4, 2016) (citing *Gilmore v. Enogex, Inc*., 1994 OK 76, 878 P.2d 360, 366).  The tort for intrusion upon seclusion focuses "solely" upon the act of getting access to the information in question.  *See Anderson v. Blake*, No. CIV-05-0729-HE, 2005 U.S. Dist. LEXIS 25654, at *13 (W.D. Okla. Oct. 21, 2005).  The purported intrusion must amount to an intent to trespass where the trespassing party is "aware of their malfeasance."  *Id*.  To be "highly offensive," the purported intrusion must be "extreme" as "there is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual."  *Leslie*, 2011 U.S. Dist. LEXIS 101493, at *11-12 (citing *Munley,* 584 P.2d at 1338).

**1.    State Farm Did Not "Intrude" to Collect Claimant Information.**

Plaintiffs' claim fails on the first element because they do not allege that there was an intrusion; they do not allege State Farm ever received the personal information in question without consent, as they must.  To the contrary, Plaintiffs admit State Farm was *entitled* to access the information in question: "When a person

… makes a claim for personal injuries, State Farm and other insurers potentially liable to pay the claim ***are entitled*** to request and review medical records to evaluate the claim and the alleged injuries." Compl. ¶ 20 (emphasis added).

Nor can Plaintiffs somehow allege that State Farm knowingly intruded. State Farm provides notice of its collection and use practices. Importantly, in their policies, Plaintiffs gave consent for State Farm to "collect, receive, obtain, use, and retain" "records, receipts, invoices medical bills, medical records, wage information, salary information, employment information, data" as well as "any other information [State Farm has] in [its] possession as a result of [State Farm's] processing, handling, or otherwise resolving claims submitted under [the] policy." *See* Owen Decl., Exs. 1-10, 6128AP at p. 6. The allegations in the Complaint bear no resemblance to viable intrusion claims, such as constant video surveillance[23]; the opening of another's private and personal mail;[24] or the search of a safe or wallet.[25] In each of those instances, unlike here, a plaintiff's information is accessed by trespass and malintent.

Plaintiffs' intrusion claim easily crumbles because the Complaint does not focus on State Farm's initial, permissible access of Plaintiffs' data, likely because

---

[23] *O'Linn v. Brown*, No. CJ-2013-4679, 2014 Okla. Dist. LEXIS 4247, at *11 (Okla. Cnty. Dist. Ct. Mar. 31, 2014).

[24] *Murphy v. Spring*, 58 F. Supp. 3d 1241, 1271 (N.D. Okla. 2014).

[25] Restatement (Second) of Torts § 652B cmt. b & illus. 4.

there was no intrusion, but rather State Farm's subsequent use of that data. Plaintiffs allege that State Farm "intruded upon the seclusion of all Class Members by soliciting, *submitting*, accepting, maintaining, *offering for sale* and *publicizing* their Private Information." Compl. ¶ 60 (emphasis added). Plaintiffs' charging allegations do not challenge Defendants' *intrusion*—the act of *obtaining* the information—but the alleged subsequent disclosure of data to Verisk and/or ISO. *See id.* As the above cases hold, that exchange of data is not intrusion.

Indeed, courts have dismissed intrusion claims where, like here, a defendant lawfully obtained data and thereafter disseminated it. For example, in *Anderson v. Blake*, the plaintiff brought an intrusion claim where a television news station aired a portion of a private video featuring the plaintiff. 2005 U.S. Dist. LEXIS 25654, at *13. The claim was dismissed because the media were entitled to seek the video. *Id.* at * 14-15. The court concluded that "[a] person does not intrude on a plaintiff's seclusion simply by securing information about the plaintiff . . . and then publishing it" and "[p]ublication alone is insufficient to constitute an intrusion upon seclusion." *Id*. at *12. Focusing on the true focus of an intrusion claim, the court held "[t]here [was] no allegation that either of these defendants participated in or directed any illegal news gathering." *Id.* at 14–15.

In reaching its holding, the *Anderson* court cited *Lovgren v. Citizens First Nat'l Bank of Princeton*, where the Illinois Supreme Court analyzed the Restatement

-34-

(Second) of Torts and held that the publication of an auction without the seller's consent did not amount to an intrusion.  534 N.E.2d 987, 989 (Ill. 1989).  The Court emphasized that "the core of this tort is the offensive prying into the private domain of another."  *Id.*; *see also id.* ("[T]he nature of this tort depends upon some type of highly offensive prying . . . not publication or publicity.")  Because Plaintiffs do not allege offensive prying in the Complaint, the intrusion claim fails.

>        2.    State Farm's Alleged Sharing of Data is Not Highly Offensive.

Plaintiffs' allegations also fall far short of the high bar for "highly offensive" conduct.  To determine whether conduct is "highly offensive," courts view the context of the alleged situation.  For example, in *Lockett v. Webco Indus.*, the Tenth Circuit found that touching another individual's shoulder to observe them urinating was not highly offensive in the context of a drug test expressly permitted by law.  2022 U.S. App. LEXIS 10778, at *11.  Here, State Farm received information from Plaintiffs it was entitled to receive under the relevant policy language and as an insurer under Oklahoma law.  Any access and purposeful disclosure to providers of that information is expressly permitted by law in the insurance industry.  There simply is no offensive conduct on which to predicate a claim against State Farm.  *See Setzer v. Farmers Ins. Co.*, 185 F. App'x 748, 755 (10th Cir. 2006) (an insurer's receipt of gynecological records was not highly offensive even though they were outside the scope of the injuries implicated in the underlying claim).  This is

especially the case when, as described above, an insurer must engage in claims handling and fraud prevention.

### E.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty.

#### 1.   State Farm Does Not Owe a Fiduciary Duty to Insureds

Plaintiffs' claim for breach of fiduciary duty against State Farm fails because the relation of insurer/claimant and insured does not impose a fiduciary duty under Oklahoma law.  To state a claim for breach of fiduciary duty under Oklahoma law, a plaintiff must plead facts showing "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of the fiduciary duty was the direct cause of damages."  *Sw. Orthopedic Specialists, P.L.L.C. v. Allison*, 2018 OK CIV APP 69, ¶ 20, 439 P.3d 430, 436.  None of that is present here.

Plaintiffs allege State Farm owed them a fiduciary duty because of the special business relationship between the parties.  Plaintiffs claim this relationship resulted because "State Farm received Private Information from the General Class as a part of adjusting an insurance claim" and "the General Class reasonably places its trust and confidence in State Farm that their Private Information will not only remain confidential, but also secure from any improper usage."  Compl. ¶¶ 74-75.

But it is well settled that "under Oklahoma law an insurer does not owe a fiduciary duty to an insured."  *Pratt v. Safeco Ins. Co. of Am.*, No. CIV-20-93-D, 2020 WL 4735350, at *2 (W.D. Okla. Aug. 14, 2020) (dismissing fiduciary duty

claim against insurer premised on allegations of a "special business relationship between the parties" and plaintiffs placing a "high degree of confidence and trust" in the insurer); *Latta v. Great Am. Life Ins. Co.*, 60 F. App'x 219, 220- 21 (10th Cir. 2003) (applying Oklahoma law and affirming summary judgment to insurer on breach of fiduciary duty claim); *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1281 (N.D. Okla. 2006) (dismissing fiduciary duty claim and noting "because Plaintiffs possessed the policy and were charged with knowledge of its terms, the parties were not truly on unequal footing"); *Siddique v. W. Heritage Ins. Co.*, No. CIV-14-456-SPS, 2015 WL 2451734, at *2 (E.D. Okla. May 21, 2015) (dismissing claim for breach of fiduciary duty against insurer).

Recognizing that transactions between an insurer and insured are at an arms' length, the Oklahoma Supreme Court has explained that the parties "[do] not stand vis-à-vis each other in any recognized form of special relationship." *Silver v. Slusher*, 770 P.2d 878, 882 n.11 (Okla. 1988); *see also Cosper v. Farmers Ins. Co.*, 2013 OK CIV APP 78, ¶ 12, 309 P.3d 147, 150 ("the existence of the duty of good faith and fair dealing implied in insurance contracts does not necessarily mean [p]laintiffs' petition states a claim for breach of fiduciary duty").

  2. <u>State Farm Does Not Owe a Fiduciary Duty to Third-Party Claimants</u>

None of the Plaintiffs are third-party claimants with standing to pursue breach of fiduciary claims on behalf of the third-party subclass. *In re FieldTurf Artificial*

*Turf Mktg. & Sales Practices Litig.*, No. 3:17-md-2779, 2018 U.S. Dist. LEXIS 149379, at *29 (D.N.J. Aug. 31, 2018) (Shipp, J.)  ("From the face of the Complaint, however, the named plaintiffs cannot represent any putative [] subclasses of which they are not a member").  Regardless, insurers do not owe a fiduciary duty to a third-party claimant when adjusting an insurance claim.  Plaintiffs' "conclusory allegations of trust and confidence reposed in" State Farm given State Farm's role in adjusting insurance claims "fail to plead any facts from which the Court could infer" that a third-party claimant relationship "was anything other than an arms' length transaction between the parties." *See Pratt*, 2020 WL 4735350, at *2.  It is not enough for Plaintiffs to simply allege that State Farm has a fiduciary duty.  *See also Santana v. Experian Info. Solutions*, No. 4:19-CV-270-RJS-JFJ, 2021 U.S. Dist. LEXIS 249690, at *8-9 (N.D. Okla. Sept. 15, 2021) ("Santana's allegation that the Defendants 'had a fiduciary duty' and 'breached that duty by keeping inaccurate information' is too general to meet the pleading requirements of Rule 8.").[26]  The

---

[26] *See also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1203 (D. Or. 2016) ("Plaintiffs' primary argument appears to be that had Plaintiffs known how Premera actually would be treating their Sensitive Information, they would not have entered into any relationship with Premera. That … is insufficient to establish a fiduciary relationship."); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 24 (D.D.C. 2019) ("True, [the insurer] required plaintiffs to provide personal and confidential information, but this will be the case in almost every insurer-insured relationship. Plaintiffs do not allege a relationship beyond that envisioned in every day interactions with [an] insurance provider that would give rise to … a fiduciary duty.").

claim must be dismissed.  *See Cosper*, 2013 OK CIV APP 78, ¶ 13, 309 P.3d at 150

(dismissing petition with breach of fiduciary duty claim against insurer).

## III.   PLAINTIFFS HAVE NOT PLED A RIGHT TO SEEK EQUITABLE RELIEF.

In addition to monetary relief, Plaintiffs seek equitable relief "enjoining State

Farm from submitting further claim information to Verisk / ISO" and "requiring

restitution and disgorgement" of revenues retained by State Farm.  Compl. ¶ 79.  But

it is well settled that where "an adequate remedy at law exists, equitable relief will

not be granted."  *Goadby v. Phil. Elec. Co*., 639 F.2d 117, 122 (3d Cir. 1981);

*Adamson v. Ortho-McNeil Pharm., Inc*., 463 F. Supp. 2d 496, 505 (D.N.J. 2006)

("Restitution . . . [is] available only when there is no adequate remedy at law."); *7-

Eleven, Inc. v. Sodhi*, No. 13–3715 (MAS) (JS), 2015 WL 13650769, at *1 (D.N.J.

Mar. 26, 2015) (same for injunctive relief).[27]

Plaintiffs allege they were injured because "their policy premiums were

increased, and/or they were denied the full opportunity to individually profit from

their Private Information kept and offered for sale by Verisk / ISO."  Compl. ¶¶ 56,

64, 71.  Plaintiffs assert legal claims seeking damages; they cannot plausibly allege

that the damages they seek will be inadequate. *Hickman v. Subaru of Am., Inc.*, No.

---

[27] Plaintiffs cannot salvage their purported entitlement to equitable relief simply because their legal claims have been insufficiently pleaded.  The relevant inquiry is simply whether an adequate remedy at law *exists*, not whether the plaintiff will be successful in pursuing that remedy.  *See Goadby*, 639 F.2d at 122.

1:21-cv-02100-NLH-AMD, 2022 U.S. Dist. LEXIS 190746, at *29 (D.N.J. Oct. 19, 2022).  Rather, if Plaintiffs were entitled to damages, those monetary damages would compensate them for any alleged increases in policy premiums or their purported inability to individually profit from their information.

## AMENDMENT WOULD BE FUTILE

Plaintiffs cannot circumvent their insurance policies or Oklahoma law, all of which contemplates the permissible disclosure of insured data for insurance business purposes.  After stripping the Complaint bare of legal conclusions and naked assertions, little, if anything, remains.  There are no facts that they can plead on amendment that will salvage their deficient legal theory.  Indeed, Oklahoma's immunity afforded to entities reporting insurance fraud, combined with Plaintiffs' contractual consent for State Farm's collection and transmission of their data render any future amended complaint futile.  *See* 36 Okla. Stat. § 363(C)(1)–(3).

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' claims against State Farm with prejudice.

Dated: May 12, 2023                    Respectfully submitted,

                                       **ALSTON & BIRD LLP**

                                       *Steven L. Penaro*
                                       Steven L. Penaro
                                       90 Park Avenue
                                       New York, NY 10016
                                       Telephone: (212) 210-9400
                                       Facsimile: (212) 210-9444
                                       steven.penaro@alston.com

                                       *Counsel for Defendant State Farm Mutual
                                       Automobile Insurance Company.*

## **CERTIFICATE OF SERVICE**

This is to certify that this day, May 12, 2023, I electronically filed the foregoing Memorandum of Law, serving all counsel of record.

> **ALSTON & BIRD LLP**
>
> */s/ Steven L. Penaro*
> Steven L. Penaro
> 90 Park Avenue
> New York, NY 10016
> Telephone: (212) 210-9400
> Facsimile: (212) 210-9444
> steven.penaro@alston.com
>
> *Counsel for Defendant State Farm Mutual Automobile Insurance Company*