**JAVERBAUM WURGAFT HICKS**
**KHAN WIKSTROM AND SININS, P.C.**
Michael A. Galpern, Esq.
NJ Attorney ID: 029031988
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
mgalpern@lawjw.com
T: 856-596-4100

**POGUST GOODHEAD, LLC**
James A. Barry, Esquire
NJ Attorney ID: 027512008
505 S. Lenola Rd., Suite 126
Moorestown, New Jersey 08057
jbarry@pogustgoodhead.com
T: 610-941-4204

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON BYCKO; ANGELA KILLMAN-ANDERSON; DEBRA LAWLESS; PAMELA S. NORTON; and JEREMY WALLER on behalf of themselves and all others similarly situated, | |
| Plaintiffs | CIVIL ACTION NO.: 3:23-cv-01316-RK-TJB |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; VERISK ANALYTICS, INC. d/ b/a ISO CLAIMSEARCH; and INSURANCE SERVICES OFFICE, INC., a subsidiary of Verisk | **PLAINTIFFS' RESPONSE TO STATE FARM'S MOTION TO DISMISS** |
| Defendants | |

# <u>Contents</u>

**TABLE OF AUTHORITIES** ...................................................................................... iii

PLAINTIFFS' RESPONSE TO STATE FARM'S MOTION TO DISMISS ............................... 1

Factual Background and Procedural History ................................................................. 1

Argument and Authority ................................................................................................. 3

   I.     Remand is Proper, and It Precludes Addressing the Merits of State Farm's Motion. ..... 4

   II.    Bycko Is a Member of the Third Party Subclass and Other Named Plaintiffs are Members of the First Party Subclass......................................................................................... 4

   III.   The Motion Should Be Treated as Dispositive or the Extensive Exhibits Should Be Ignored, and if the Court Considers the Exhibits, Plaintiffs Must Be Given a Reasonable Opportunity to Submit Responsive Materials. ........................................................... 5

   IV.   State Farm's Disclosures are Not "Expressly Authorized.".................................... 7

      A.    Information at Issue is Private .................................................................... 7

      B.    Disclosure Is Allowed Regarding Suspicion of Fraud, But That Provision Does Not Apply to any of Plaintiffs' Claims ............................................................... 8

      C.    Oklahoma Law Only Allows Disclosure of Private Information in Defined Instances, None of Which Apply to State Farm's Disclosures to Verisk / ISO. .................................... 9

   V.    Insurance Policies Must Comply with Oklahoma Law, So Alleging that State Farm's Conduct Violated Specific Okla. Insurance Law Per Se Amounts to Breach of Contract. ...... 16

VI.     State Farm's Disclosures Are Highly Offensive, Public, and not of Legitimate Concern to Others, so a Cause of Action for Publicity of Private Facts Is Established. ......................... 18

    A.    Disclosures Are Highly Offensive. ............................................................................. 19

    B.    Public Disclosure Was Made. .................................................................................... 22

    C.    Disclosures Were Not of Legitimate Public Concern ................................................. 24

VII.   State Farm's Disclosures Facilitate Unauthorized Access to Plaintiffs' Private Information, and that Constitutes an Intrusion Upon Seclusion. ............................................. 25

VIII.  State Farm Owes a Fiduciary Duty to Claimants, and It Breached That Duty by Disclosing Private Info. to Third Parties for Purposes Unrelated to Adjusting or Litigating a Claim. ...... 27

IX.    Equitable Relief is Proper Since the Only way to Avoid Future Harms is to Strip the Offending Data Out of Verisk / ISO's Database. .................................................................... 28

X.    Defendants' Futility Argument Is a Makeweight Argument Relying on Plainly Erroneous Authority, Perfunctorily Argued. .................................................................................................... 30

Conclusion ....................................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

### <u>*Cases*</u>

*Accord Blaszkowski v. Mars, Inc.*

    2008 U.S. Dist. Lexis 139491 (S.D. Fla. Apr. 8, 2008……………………………..33

*Accord Vaught v. Hartford Life & Accident Ins. Co.*

    2011 U.S. Dist. Lexis 98945 (S. D. Ohio Sept. 1, 2011)………………………...30

*Allstate Ins. Co. v. A&F Med., PC*

    2016 U.S. Dist. Lexis 168554 (E.D.N.Y. Dec. 6, 2016)…………………………………34

*Alva State Bank & Trust Co. v. Dayton*

    1988 OK 44, ¶5; 755 P.2d 635 (Okla. 1988) .................................................9, 22

*Anderson v. Blake*

    2005 U.S. Dist. Lexis 25654 (W.D. Okla. Oct. 21, 2005)………………………….28

*Birmingham v. Travelers*

    475 N.J. Super 246, 255 (App. Div. 2023) .......................................................8

*Bromwell v. Michigan Mut. Ins. Company*

    115 F.3d 208, 214 (3rd Cir. 1997) ...................................................................5

*Bruni v. City of Pittsburgh*

    824 F.3d 353 (3rd Cir. 2016) ...........................................................................6

*City Council of City of Orange Twp. v. Edwards*

    455 N.J. Super 261, 278-279 (App. Div. 2018)………………………………………33

*Cty. of Essex v. First Union Nat'l Bank*

    186 N.J. 46, 61 (2006)………………………………………………………………...33

*Djowharzadeh v. City Nat'l Bank & Trust Co.*

    1982 OK CIV APP 3, ¶¶20 – 24; 646 P.2d 616………………………………….…23, 30

*Doe v Barrington*

    729 F. Supp. 376, 382 (D.N.J. 1990)…………………………………………………24

*Elk City Golf and Country Club, Inc. v. Philadelphia Indemnity Insurance Co.*

    2019 WL 7195613 (W.D. Okla. December 26, 2019)…………………………………12

*Erickson v. Indep. Sch. Dist. No. 1-41*

    2016 U.S. Dist. Lexis 162508, *4-6 (W.D. Okla. Nov. 23, 2016)………………………21

*Estate of Leeman v. Eagle Ins. Co.*

    309 N.J. Super. 525, 533 (App. Div. 1998) ......................................................8

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*

210 F.3d 1, 16 (1st Cir. 2000)………………………………………………………32

*Gasperini v. Ctr for Humanities*

518 U.S. 415, 427 (1996) ..............................................................................4, 5

*Gilmore v. Eogex, Inc.*

878 P.2d 360, 366 (Okla. 1994)……………………………………………………29

*Gresik v. PA Partners, L.P.*

33 A.3d 594, 599; 613 Pa. 303 (Penn. S. Ct. 2011) ………………….……….………14

*Guilbeau v. Durant H.M.A., LLC*

2023 OK 80; __ P.3d __, (Okla. June 20, 2023)…………………………………..29, 30

*Harold v. Orange County*

668 So.2d 1010 (Fla. Ct. App. 1996)……………………………………………………14

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*

402 F. Supp. 3d 767, 780-781 (N.D. Cal. 2019)………………………………..23, 25

*In re Search Warrant (Sealed)*

810 F.2d 67, 71 (3d Cir. 1987)…………………………………………………...24

*Jones v. Farmers*

2012 U.S. Dist. Lexis 194873, 2012 WL 12863976, *1 (W.D. Okla. 2019)…..……...9, 12

*Jordan v. Shattuck Nat'l Bank*

868 F.2d 383 (10th Cir. 1989)…..……………………………………………………23

*Kilopass Tech. Inc. v. Sidense Corp.*

2012 U.S. Dist. Lexis 47865 (N.D. Cal. Apr. 4, 2012)…………………………………32

*Loven v. Church Mut. Ins. Co.*

2019 OK 68, ¶1; 452 F.3d 418 (Okla. 2019) ..............................................11

*Matter of New York Constr. Materials Assn., Inc. v. New York State Dep't of Envtl Cons.*

83 A.D. 3d 1323 (N.Y. App. Div. 2011)……………………………….……………14

*Maxey v. State Farm Fire & Cas. Co.*

    2008 U.S. Dist. Lexis 136840 (S.D. Ohio Aug. 11, 2008)………………………………31

*Munley v. ISC Financial House, Inc.*

    584 P.2d 1336, 1339 (Okla. 1978)……………………………………………………29

*Myers v. All. For Affordable Servs*

    371 F. App'x 950, 959 (10th Cir. 2010)………………………………………………21

*Nader v. General Motors Corp.*

    31 A.D. 2d 392, 393 (N.Y. Ct. App. 1969)……………………………………………30

*Nitzel v. Jackson*

    1994 OK 49; 879 P.2d 1222 (Okla. 1994) ……………………………………………17

*Oklahoma Public Employees Ass'n v. State Ex Rel. Oklahoma*

    267 P3d 838, 848-849 (Okla. 2011)…………………………………………………...24

*Progressive Direct Ins. Co v Pope*

    2022 OK 4, ¶27; 507 P.3d 688, __ (Okla. 2022) ...............................................................7

*Regions Bank v. Kaplan*

    2021 U.S. App. Lexis 31542 (11th Cir. Oct. 19, 2021)…………………………………..27

*Scott Fetzer Co. v. Comm'r of Revenue*

    2016 Minn. Tax Lexis 15 (Tax Court Mar. 8, 2016)……………………………………14

*Shepard v. Farmers Ins. Co., Inc.*

    1983 OK 103, ¶ 2; 678 P.2d 250, 251………………………………………...20, 21

*Smith v. Datla*

    451 N.J. Super. 82, 96-99 (App. Div. 2017)…………………………………………..24

*Tacoma Public Library v. Woessner*

    90 Wash. App. 205, 222 (Ct. App. Wash. 1998)………………………………24, 25

*Tilley v. Maier*

    495 F. App'x 925, 927……………………………………………………...21

*United States v. Esquivel*,

    88 F.3d 722, 726 (9th Cir. 1996)………………………………………………26

*United States v. Westinghouse Elec. Corp.*

    638 F.2d 570, 577 (3d Cir. 1980) ....................................................................9

*UP Aero, Inc. v. Knight*

    2014 Conn. Super. Lexis 1355 (Hartford Superior Court June 2, 2014)……………...32

*Vesta Corp. v. Dep't of Revenue*

    2022 Ore. Tax Lexis 18 (Ore. Tax Court Mar. 28, 2022)………………………....14

*Wathor v. Mutual Assur. Adm'rs, Inc.*

    2004 OK 2; 87 P.3d 559, 561-62………………………………………...31

*Westinghouse Elec. Corp.*

    638 F.2d 570, 577 (3d Cir. 1980)……………………………………….9, 24

## <u>Statutes and Other Legal Authorities</u>

### Federal

28 U.S.C. 1332(d) ...........................................................................................4

THE GRAMM-LEACH-BLILEY ACT, P.L. 106-102…………..…………………...9, 12

Fed. R. Civ. Pro.

    12(b)(1)………....…………………………………………………….4

    8(d)(2)……………………………………………………………33

### State

Okla. Const., Art. II

    § 6…………………………………………………………………...33

OKLAHOMA'S OPEN RECORDS ACT…………………………………………24

PUBLIC RECORDS ACT………………………………………………………14

12 O.S.

§ 2503(B)………………………………………………………………………………9

§ 2503(D)(4)……………………………………………………………………………9

36 O.S.

§ 307.2……………………………………………………………………..……10, 11

§ 363…………..……………………………………………………………..………10, 28

§ 363(a)……………………………………………………………………..…22, 28, 29

§ 363(C)(1)………………………………………………………………............34

OAC

§ 365:35-1-1……………………………………………………………………..…..9

§ 365:35-1-2…………………………………………………………………….…..12

§ 365:35-1-4………………………………………………………..…….7, 12, 15, 17, 20

§ 365:35-1-10…………………………………………………………………..…16

§ 365:35-1-20………………………………………………………………..10, 11, 13

§ 365:35-1-30…………………………………………………………………14, 15

§ 365:35-1-31……………………………………………………………………..11

§ 365:35-1-32………………………………………………………………10, 11, 12

§ 365:35-1-40………………………………………………………………12, 14

§ 365:35-1-41……………………………………………………………………..18

**Other**

RESTATEMENT (SECOND) OF TORTS

§ 652D, Comment a……………………………………………………………26

§652B………………………………………………………………………29

Bureau of Labor web page: https://www.bls.gov/oes/current/oes131031.htm. The Court is entitled to take judicial notice of government statistics. …………...……………………………………………………………………29

Verisk 2020 Annual Report https://s29.q4cdn.com/767340216/files/doc_financials/2020/ar/Verisk-Annual-Report-2020-Final-Bookmarked-Version-03_30_21.pdf.......................................................................27

Plaintiffs respond to State Farm's Motion to Dismiss (D.E. 21) ("Motion"). For reasons noted herein, the Motion must be denied. Alternatively, Plaintiffs ask for leave to amend the Complaint regarding any claims for which the Court finds Defendants' arguments meritorious.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this action in New Jersey State Court (Middlesex County) asking the Court to certify a class of insurance claimants (with subclasses for first-party and third-parties) and to provide injunctive / declaratory relief to Plaintiffs associated with State Farm's improper submission of Plaintiffs' "Private Information" [1] (hereinafter "PPI") to Verisk / ISO and its improper aggregation and sale of same. Plaintiffs asserted four causes of action against State Farm: 1) publicity given to private life, 2) intrusion upon seclusion, 3) breach of contract, and 4) breach of fiduciary duty. Defendants have no legal authority to transmit, solicit, store and sell Plaintiffs' PPI.[4] Plaintiffs have sufficiently stated their contractual and privacy-based claims against State Farm in order both to secure injunctive / declaratory relief and/or to obtain damages.

State Farm mischaracterizes the scope of disclosure attendant to submitting Plaintiffs' Personal Information for inclusion in Verisk / ISO's databases. It argues that Verisk / ISO's "insurance segment primarily serves property and casualty insurance customers – not the general public…." (D.E. 21-1, PageID 218.). First, even if Verisk / ISO offered its services exclusively to

---

[1] The Complaint defines "Private Information" as including Non Public Personal Information and Private Health Information. (Compl. ¶17). Non Public Personal Information is defined broadly to mean information that was "(i) provided by the consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution. (Compl. ¶14) and Private Health Information health information collected from an individual, created or received by a health care provider, health plan, employer, or health care clearinghouse that relates to the "physical or mental health or condition…; the provision of health care to an individual…" individual," that identifies or may identify the individual. (Compl ¶22.)

[4] Defendants both distorted a limited statutory exception allowing them to transmit Private Information when they suspect fraud. Plaintiffs did not assert that any of their claims raised suspicions of fraud, and Defendants also made no such allegations. The record is devoid of even a hint that any fraud by Plaintiffs, so this limited statutory exception is inapplicable as discussed below.

the insurance industry, that offering would run afoul of controlling law.[5] As discussed below, there are more than 100,000 insurance adjustors in the United States who can access Plaintiffs' . However, that contention regarding the scope of disclosure runs contrary to the allegations of the Complaint and the evidence included therewith. "One small sliver of the services offered by ISO under the 'Verisk Analytics' trademark includes 'Compilation and analysis of business data in the fields of energy and natural resources, agriculture, mining, transportation, supply chain logistics, engineering, weather, environment and climate, cartography, insurance, banking, finance, construction, real estate, law enforcement, emergency services, government…, and geopolitics.'" (Compl. ¶8(b) (quoting Verisk's trademark application which must be submitted to the U.S. Patent and Trademark Office subject to penalty of federal perjury). "Verisk customers included all of the top 100 U.S. P&C insurers…, insurers in international markets, seven of the top ten global chemical manufacturers, nine of the top ten global energy producers…, and the top 30 credit card issuers in North America, the UK, and Australia." (cited in the Compl. at p.7, n.8).

State Farm "submitted Private Information to Verisk / ISO." Compl. ¶ 36. The PPI submitted includes "social security information to medical records that are private by nature, as well as financial details." Compl. ¶ 1. The foregoing negates State Farm's assertion that Plaintiffs "do not plead what data of theirs was transmitted." (D.E. 21-1, PageID 216.)

State Farm alleges that Plaintiffs do not plead harm and do not explain what Verisk / ISO did with their PPI. (D.E. 21-1, PageID 223, 224.) However, Plaintiffs properly pled injury.[6] (Compl. ¶ 56) ("at least nominal damages because their PPI was publicly exposed, their legitimate

---

[5] A consistent theme in State Farm's motion is their assertion that any use within the "insurance industry" is acceptable. (D.E. 22-1, PageIDs 217, 218, 224, 242.) Plaintiffs well understand why State Farms' motivation for submitting the information to Verisk / ISO and how it benefits State Farm and other insurers. The economic benefit to State Farm, however, does not excuse State Farm from compliance with applicable law.
[6] In their brief, Verisk / ISO conceded that Plaintiffs had established injury for the breach of contract class.

claims were the improper bases for second-guessing subsequent claims that they might assert, their policy premiums were increased, and/or they were denied the full opportunity to individually profit from their Private Information"). Plaintiffs also risk future harm from use of their PPI. (Compl. ¶ 62) ("may find themselves being denied or charged higher prices for insurance, ultimately costing them more than they should have paid, due to their PPI being improperly shared"). As far as what Verisk / ISO is doing with Plaintiffs' PPI, they are selling it. That too was plainly alleged. (Compl. ¶¶1, 30, 41(b) and (c), 50, 61, 79(c) ("each individual invasion may involve..small profit amounts…[but] in the aggregate, these invasions comprise billions of dollars")).

State Farm removed the complaint (D.E. 1) with the consent of Defendants Verisk Analytics, Inc. and Insurance Services Office, Inc. (collectively, "Verisk / ISO") (D.E. 1 at ¶34). In removing, State Farm asserted that this Court had diversity subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d). (D.E. 1 at ¶6) Despite invoking this Court's jurisdiction by removing the case, Defendants each subsequently moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that Plaintiffs lack Article III standing. (D.E. 20-1 at 8-11; D.E. 21-1 at 9-13). Plaintiffs now seek remand. (D.E. 38.)

## ARGUMENT AND AUTHORITY

Federal court "sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr for Humanities*, 518 U.S. 415, 427 (1996). The parties agree that, to the extent that state law governs particular questions, it is Oklahoma's substantive law that should be applied. (D.E. 21, n.8). Therefore, controlling precedent on procedural legal matters is law applicable in the United States District Court for the District of New Jersey, the Third Circuit, and the Supreme Court. For substantive law, cases of the State Courts of Oklahoma are controlling authority. Plaintiffs are unaware of any matters where it is unclear whether the "procedural" federal law or the "substantive" state law should be applied, can sometimes be a "challenging endeavor."

*Gasperini*, 518 U.S. 415, 427. Except where an issue is clearly procedural, Plaintiffs suggest the Court should view law from outside Oklahoma as persuasive rather than binding.

## I.    Remand is Proper, and It Precludes Addressing the Merits of State Farm's Motion.

As Plaintiffs argued in their letter to the Court, remand is proper for the claims against State Farm since it now contends that Plaintiffs lack standing. (D.E. 33 and 38). Plaintiffs further contend that the question of remand must be decided before the Court addresses the pending motions to dismiss. *Id.* For reasons noted in their letter to the Court and Motion, Plaintiffs urge the Court to remand this matter to New Jersey State Court. The Court must decline State Farm's invitation to substitute its own evaluation of standing in a New Jersey state court. "Whether a matter is justiciable under state law is a matter for the state court to decide." *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3rd Cir. 1997) (rejecting argument that the "futility exception" rendered dismissal proper rather than simple remand).

## II.   Bycko Is a Member of the Third Party Subclass and Other Named Plaintiffs are Members of the First Party Subclass.

State Farm complains that Plaintiffs "do not allege whether they made first-party or third-party claims." (D.E. 21-1, PageID226.) However, State Farm established that all of the Plaintiffs are potential First Party Subclass members because all of them were insured during some period by State Farm. (D.E. 21-8, PageIDs 424, 425.)

There will be General Class members who are members of both the First Party and Third Party Subclasses. State Farm asserts that Plaintiff Bycko currently has a policy with State Farm, so she is a First-Party Subclass member. However, that conclusion is at least incomplete. At a time when Bycko made a claim that was improperly reported to Verisk / ISO by State Farm in 2018,

she was NOT insured by State Farm but rather by Farmers.[7] At least one claim made by Bycko and reported by State Farm to Verisk / ISO was made while she was insured by Farmers. Therefore, she is a member of the Third Party Subclass.

### III. The Extensive Exhibits Should Be Ignored, and if the Court Considers the Exhibits, Plaintiffs Must Be Given a Reasonable Opportunity to Submit Responsive Materials.

State Farm submitted two declarations: 1) from its counsel S. Penaro (D.E. 21-2, PageID 256) to which it attached five exhibits (Exhibits A – E), and 2) from its "auto underwriting team manager," Jonathan Owen (D.E. 21-8, PageID 424), to which it attached 10 insurance policies purportedly applicable to the Plaintiffs. Together, the exhibits are more than 600 pages.

First, it is error to consider evidence submitted in support of a motion to dismiss without giving the responding party an opportunity to submit its own materials. *Bruni v. City of Pittsburgh*, 824 F.3d 353 (3rd Cir. 2016) ("it is reversible error for a district court to convert a motion under Rule 12(b)(6)...into a motion for summary judgment unless the court provides notice of its intention to convert…and allows an opportunity to submit materials…or allows a hearing").

State Farm argues that the attached insurance policies "form the basis" of Plaintiffs' breach of contract claims, so it is proper to consider that evidence. (D.E. 21-20, PageID 883). The weakness of that argument rests in two basic facts: 1) Plaintiffs' breach of contract claims rest on the proposition that State Farm's policies must comply with Oklahoma law, and so any violation of Oklahoma law is per se a breach of contract; and 2) State Farm did not attach the correct policies.

Plaintiffs explain below the contours of their breach of contract claim, but in broad strokes, State Farm's policies must comply with Oklahoma law, so if Plaintiffs can establish a plain violation of Oklahoma law, that same conduct must also be a per se violation of the applicable

---

[7] While Bycko was insured by Farmers State Farm improperly reported multiple claims to Verisk / ISO.

insurance policy. State Farm failed to provide proper notice and to secure appropriate consent, so its disclosures violate Oklahoma law. [9] *Progressive Direct Ins. Co. v. Pope,* 2022 OK 4, ¶27; 507 P.3d 688 (Okla. 2022) ("insurance policy is issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy"); *Estate of Leeman v. Eagle Ins. Co.*, 309 N.J. Super. 525, 533 (App. Div. 1998) ("statute controls when it conflicts with an insurance policy, even if the Ins. Comm. approves the policy's language" and language must be "deemed to be conformed with the statute"); *Birmingham v. Travelers*, 475 N.J. Super 246, 255 (App. Div. 2023).

However, should Defendants want to address the specific policy language that might relate to a specific disclosure, the relevant disclosure date and policy in effect then would have to be identified. State Farm did not disclose to the Court what dates it disclosed PPI to Verisk / ISO, so there is no way on the present record to determine whether the policies produced by State Farm were applicable. Defendants know when they disclosed information to Verisk / ISO, so they would be required to identify the relevant disclosure dates and then match them up with the policy or policies in force at the time. Plaintiffs' insurance claims  were made well before 2023, but most of the insurance policies referenced by State Farm were in effect Jan. 20, 2023.

Plaintiffs thus ask the Court to either ignore the attached materials or to give Plaintiffs a reasonable opportunity to conduct such discovery as may be reasonably necessary.

---

[9] Myriad factual issues need to be explored by discovery / depositions regarding any purported notices given by State Farm to its insureds regarding the disclosures of PPI. Can a policy operate as a "notice" in this context. Regulations imply that the notice must be a stand-alone document calculated to substantively apprize the insured of exactly what is being done, versus form language buried in an insurance contract. If relevant policy language may comprise a "notice," does the language from the relevant policy satisfy the demanding "clear and conspicuous" requirement? See OAC 365:35-1-4(2) defining "clear and conspicuous" to mean "a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." Examples are provided in the regulation which require the notice to "avoid legal and highly technical business terminology, whenever possible" and to "avoid explanations that re imprecise and readily subject to different interpretations." OAC 365:35-1-4(2)(B)(i).

## IV.    State Farm's Disclosures are Not "Expressly Authorized."

Under Oklahoma law and related federal law, PPI must be kept confidential unless disclosure is specifically authorized. No "person shall disclose any nonpublic personal information contrary to" The Gramm-Leach-Bliley Act, P.L. 106-102 ("GLBA") of 1999. To justify its disclosure, State Farm must show an exception to the general prohibition on disclosure.

### A.  Information at Issue is Private

Oklahoma Courts have held that financial records "are clearly confidential and…customers have a reasonable expectation of privacy in them." *Alva State Bank & Trust Co. v. Dayton*, 1988 OK 44, ¶5; 755 P.2d 635 (Okla. 1988). Similarly, and not surprisingly, health records are also confidential, and patients have a reasonable expectation of privacy in them. It is uncontestable that a person's medical information is private. *See* OAC 365:35-1-1 (regulations designed to protect privacy of consumer financial and health information). *See also United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("there can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."). Oklahoma codified the privacy interests that individuals have in their private medical records in 12 O.S. § 2503(B) which provides that a "patient has a privilege to refuse to disclose and to prevent any other person form disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition, including alcohol or drug addiction…" When the patient brings a claim or defense to which their health is an issue the privilege is "qualified to the extent that an adverse party…may obtain relevant information regarding the condition by statutory discovery." 12 O.S. § 2503(D)(4).

Insurers have argued that the type of financial information at issue here is private under GBLA. *Jones v. Farmers,* 2012 U.S. Dist. Lexis 194873, 2012 WL 12863976, *1 (W.D. Okla.

Feb. 29, 2019) ("With respect to Plaintiffs' discovery requests which would require the identification of Defendant's policyholders and any personal information about them, both the…[GLBA], and Oklahoma law, Okla. Stat. tit. 36, § 307.2 and Okla. Admin. R. 365:35-1-20 & 365:35-1-32, preclude production of this information, according to Defendant [Farmers].")

### B. Disclosure Is Allowed Regarding Suspicion of Fraud, But That Provision Does Not Apply to any of Plaintiffs' Claims

State Farm claims that Oklahoma law allows it to disclose PPI to "any organization…involved in the prevention or detection of fraudulent insurance activities." (D.E. 21-1, PageID 228). State Farm leaves out some important context in making that misleading assertion. 36 O.S. § 363 only authorizes disclosure when the insurer "has reason to believe that a person…has engaged in…fraud." *Loven v. Church Mut. Ins. Co.*, 2019 OK 68, ¶1; 452 F.3d 418 (Okla. 2019) (§ 363 "provides immunity for those who report or provide information regarding suspected insurance fraud"). The report must directly involve a fraud investigation.

There is no allegation in the Complaint or in the Motion of any circumstances that gave State Farm "reason to believe" that Plaintiffs "engaged in fraud." In fact, there have been no allegations that Plaintiffs have done anything improper at all beyond filing insurance claims, which they are entitled to do under Oklahoma law, and which is the whole reason that insurance exists.

Realizing that its reliance on 36 O.S. § 363 does not hold water, State Farm casts about broadly attempting to justify its disclosure, but none of the cited provisions authorize its disclosures. (D.E. 21-1, PageID 229). OAC 365:35-1-31(a) relates to processing and servicing transactions that a "consumer requests or authorizes." Plaintiffs did not request any transaction related to Verisk / ISO, so that provision does not apply. Similarly, OAC 365:35-1-31(b) relates to activities that are "necessary to effect" a transaction, and again that provision is inapplicable here.

ISO purports to undertake insurance rating services, so disclosure to ISO under OAC 365:35-1-32(a)(3) could potentially authorize disclosures of "nonpublic personal financial information," but not of health information. However, there are two problems with this provision for State Farm: first, it could only authorize disclosure of _financial_ information, not of _health_ information; and second, it could only be used as a part of an insurance rating service, not for the myriad of other purposes that Verisk / ISO uses the disclosed data for. The limitation to financial information is logical since the insurance rating service uses claims histories to determine possible rates for various types of insurance. Verisk / ISO may perform insurance rating services, but a much narrower disclosure would be allowed, and it could only be used for ratemaking purposes.

### C. Oklahoma Law Only Allows Disclosure of PPI in Defined Instances, None of Which Apply to State Farm's Disclosures.

Oklahoma law permits State Farm to disclose PPI to third parties (such as Verisk / ISO) only when the subjects of the disclosure are either "customers" or "consumers." See generally OAC 365:35-1-1 et seq., a copy of which is attached as Exhibit 1 for the Court's convenience. The rules describe the "conditions under which a licensee [such as State Farm] may disclose nonpublic personal **health** information and nonpublic personal **_financial_** information about individuals to affiliates and nonaffiliated third parties." OAC 365:35-1-2(a)(2) (emphasis added). Disclosure of financial information is governed by OAC 365:35-1-20 et seq., and disclosure of health information is governed by OAC: 365:35-1-40 et seq.

Nowhere do the regulations authorize any disclosures unless the subject of the disclosure relates to either a "customer" or a "consumer" to whom State Farm has given the requisite "clear and conspicuous" disclosures,[10] obtained requisite consent, and given the person an option to opt-

---

[10] "Clear and conspicuous" is defined in 365:35-1-4(2), and it is clear that State Farm never gave Plaintiffs the requisite "clear and conspicuous" notice or opportunity to opt-out that would have been required.

out of the disclosure. OAC 365:35-1-10 et seq. Disclosure of PPI is permitted only for "customers" or "consumer" and only when appropriate notice is given.

Other insurers in Oklahoma have taken the position that Oklahoma law protects all personal information about their insureds from disclosure. In *Jones v. Farmers*, 2012 WL 12863976, *1 (W.D. Okla. Feb. 29, 2019), Farmers argued that "[w]ith respect to Plaintiffs' discovery requests which would require the identification of Defendant's policyholders and any personal information about them, both the Gramm-Leach-Bliley Act…and Oklahoma law …" *Id.* at *2 (citing 36 O.S. § 307.2 and OAC 365:35-1-20 and -32). *See also Elk City Golf and Country Club, Inc. v. Philadelphia Indemn. Ins. Co.*, 2019 WL 7195613 (W.D. Okla. December 26, 2019) ("Defendant asserts that ISO Claims Search information is protected under HIPAA and the Gramm-Leach-Bliley Act, and that it includes confidential and proprietary information belonging to ISO").

State Farm's observations that New Jersey law requires reporting certain information to ISO indicates that where states want to write such provisions into law, they know how to do so. N.J. Admin. Code 13:88-2.4 (requiring reporting regarding most ***auto*** claims, but not other types, though State Farm reports other types too).

State Farm's disclosures do not comply with any of the express provisions of Oklahoma regulations. Therefore, State Farm attempts to cloud the issues with misleading references taken out of context. None of State Farm's arguments can get around the fact that its disclosures to an unaffiliated third party are unauthorized.

### 1. Verisk / ISO Is Not an "Affiliate" of State Farm, and it Does Not Undertake Claims Handling or Other Activities "On Behalf Of" State Farm.

Disclosure may be allowed when made to an "affiliate" or to a company that undertakes actions "on behalf of" State Farm. See, e.g., OAC 365:35-1-20(a) (regarding financial information

and limiting disclosures to "unaffiliated third parties") and 365:35-1-40 (regarding health information). "'Affiliate' means a company that controls, is controlled by or is under common control with another company." OAC 365:35-1-4(1). Verisk / ISO is not an affiliate of State Farm, and State Farm never contends that it is or was.

However, State Farm contends that Verisk / ISO undertakes actions "on behalf of" State Farm. (D.E. 21-1, Page ID 230). In making this argument, State Farm reads the "on behalf of" language from OAC 365:35-1-40(b) too broadly. The "on behalf of" language means a contractor engaged to undertake a specific claim function, not an entity to which information is given with no limits on its use and no specific tasks to undertake "on behalf of" State Farm. See, e.g., OAC 365:35-1-30(a)(1)(B) (when a third party performs services on behalf, to "enter into a contractual relationship with the third party that prohibits the third party from disclosing or using the information other than to carry out the purposes for which the licensee disclosed the information").

"On behalf of" in the regulatory context should be read to include entities that contract with State Farm to provide specific analytical services directly related to, for example, its claim handling services. Entities like ISO whose actions may benefit State Farm in some undefined way at a later date are not acting "on behalf of" State Farm as contemplated by the regulations. There must be a more direct contractual relationship to establish action "on behalf of" State Farm. *Matter of New York Constr. Materials Assn., Inc. v. New York State Dep't of Envtl Cons.*, 83 A.D. 3d 1323 (N.Y. App. Div. 2011) ("vehicles operated 'on behalf of'…mean[s] 'to provide by a contractor, labor, services...to a regulated entity which are integral to the performance"); *Gresik v. PA Partners, L.P.*, 33 A.3d 594, 599; 613 Pa. 303 (Penn. S. Ct. 2011) (imposing liability "on a defendant who makes an alteration 'on behalf of' a possessor of land. The term 'on behalf of' means that the servant or contractor who makes the alteration does so for the possessor's benefit

and by his authority."); *Vesta Corp. v. Dep't of Revenue*, 2022 Ore. Tax Lexis 18 (Ore. Tax Court Mar. 28, 2022) (even an independent contractor "does not act 'on behalf of' a taxpayer if its contract with the taxpayer does not determine the nature of its activity."); *Harold v. Orange County*, 668 So.2d 1010 (Fla. Ct. App. 1996) ("the mere act of contracting with a public body to construct a public improvement does not mean that the private contractor is 'acting on behalf' of the public body within the contemplation of the Public Records Act"); *Scott Fetzer Co. v. Comm'r of Revenue*, 2016 Minn. Tax Lexis 15 (Tax Court Mar. 8, 2016).

Even if it could be argued that Verisk / ISO undertook specific actions "on behalf of" State Farm, there would have to be an express contract identifying the services rendered by Verisk / ISO to State Farm. OAC 365:35-1-30(a)(1)(B). To clarify this exception, allowing disclosure to a third party, the following example is provided in the regulations:

> If a licensee discloses nonpublic personal financial information…to a financial institution with which the licensee performs joint marketing, the licensee's contractual agreement with that institution meets the requirements…if it prohibits the institution from disclosing or using the nonpublic personal financial information except as necessary to carry out the joint marketing…

OAC 365:35-1-30(a)(2). State Farm made no allegations that such a contractual relationship exists between it and Verisk / ISO. Thus, when the regulations are read in context, it is clear that the disclosures to Verisk / ISO are not authorized since it is not an "affiliate" of State Farm nor is it acting "on behalf of" State Farm.

### 2. State Farm Can Only Disclose Information Regarding "Consumers" or "Customers" Given a "Clear and Conspicuous" Privacy Notice.

As noted above, disclosure is only allowed for "customers" and "consumers." Third Party Subclass members are neither "customers" nor "consumers." "'Consumer' means an individual who seeks to obtain, obtains or has obtained an insurance product or service from a licensee…."

OAC 365:35-1-4(6). That is, a "consumer" is a former "customer" or a member of the general public inquiring about possible insurance services with State Farm. A "customer" means someone who has entered into a "continuing relationship" with State Farm. OAC 365:35-1-10(c)(1).

The reason that disclosures are only allowed for "consumers" and "customers" is that a privacy notice and opportunity to opt out must be given before any disclosures. OAC 365:35-1-10(a). "Customers" and "consumers" are the only parties to whom such notices must be given, so they are the only parties about whom State Farm can make disclosures to unaffiliated third parties.

When Bycko made her 2018 claim, she had neither sought coverage from State Farm nor was she covered by State Farm. Therefore, she was neither a "consumer" nor a "customer." There is no provision allowing disclosure of PPI for persons who are neither "customers" nor "consumers" of State Farm and for whom the requisite privacy notice, obtaining consent, and providing an opportunity to opt-out have not been provided. OAC 365:35-1-10 et seq.

### 3. The Purported Notice Is Patently Inadequate, and it Circularly References Back to and is Coextensive with Oklahoma Law.

As noted above, the Court should either ignore the extensive exhibits attached to State Farm's Motion or give Plaintiffs an opportunity to conduct necessary discovery to adequately respond to the evidence submitted. However, just with the evidence in hand, it can be seen that the policy language that State Farm contends applies does not help its case. The policy does not provide "clear and conspicuous" notice as required by the regulations:

(A) "*Clear and conspicuous*" means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information…
(B) Examples are as follows:
  (i) Reasonably understandable. A licensee makes its notice reasonably understandable if it: (I) Presents the information in the notice in clear, concise sentences, paragraphs and sections;… (V) *Avoids legal and highly technical business terminology whenever possible*; and (VI) *Avoids*

> ***explanations that are imprecise and readily subject to
> different interpretations***.
> (ii) Designed to call attention. A licensee designs its notice to call attention to
> the nature and significance of the information in it if the licensee: (I) Uses
> a plain-language heading to call attention to the notice; (II) Uses a typeface
> and type size that are easy to read;…(III) Uses ***boldface or italics for key
> words***; and (IV) In a form that [includes]…***distinctive type size, style, and
> graphic devices, such as shading or sidebars***.

OAC:365-1-4(2).

The language that State Farm gave Plaintiffs notice of the disclosures meets none of the

foregoing "clear and conspicuous" notice requirements. (D.E. 21-9, Page ID 460 – 465.) State

Farm's purported notice uses legal and technical terminology, the explanations are imprecise and

open to different interpretations. It does not use boldface or italics for key words nor does it

highlight the specific language. It is on "page 6 of 6" of the form at issue. (D.E. 21-9, PageID 465.)

The "authorizations" anticipated by OAC 365:35-1-41 are of the type where a specific

person making an insurance claim signs a document clearly identifying the relevant records to be

obtained and the other required disclosures from the regulation whether obtained during litigation

or in prelitigation negotiations. See, for example, *Nitzel v. Jackson*, 1994 OK 49; 879 P.2d 1222

(Okla. 1994) (discussing the proper scope of a release for medical records to evaluate a claim).

The language referenced in the insurance policy does not satisfy the minimum

requirements of the regulation authorizing disclosure. See OAC 365-1-41(a). A valid authorization

must include "general descriptions of the parties to whom the licensee discloses…, the purpose of

the disclosure and how the information will be used." OAC 365:35-1-41(a)(3). No mention is made

of Verisk / ISO, and zero disclosure is given of how the information will be used.

The policy is not signed and dated by a person whose public information is to be disclosed.

Further, there is no notice of the time for which the authorization is valid nor is there a notice that

the "customer may revoke the authorization at any time and the procedure for making a

revocation." OAC 365:35-1-41(a)(5). Despite giving no time limits, State Farm apparently contends that the disclosure allows Verisk / ISO to keep the information forever and to use it for anything Verisk / ISO sees fit to do with the information. Nowhere in any of the policies were the insureds given the opportunity to opt-out of having their information disclosed to Verisk / ISO.

The policy language circuitously circles back to permitting disclosures "otherwise permitted by [Oklahoma] law," so the analysis under the policy language is the same as what is allowed under Oklahoma law.[12] (D.E. 21-13 (p. 38 of 44)). State Farm appears to have drafted its policy language to allow it to undertake any disclosures allowed by Oklahoma law. However, since the disclosures are prohibited by Oklahoma law, the policy language does not help State Farm.

### 4.   In the Absence of Fraud, No Authorization to Disclose Third-Party PPI.

The parties cooperated to gather information on Plaintiffs before State Farm filed its Motion. (D.E. 21-2, Penaro Decl. at ¶ 9.) State Farm located insurance policies for all of the Plaintiffs, and they probably pulled their Verisk / ISO reports. Despite their willingness to apprise the Court of information outside of the Complaint, they were unwilling to share with the Court what Plaintiffs' Verisk / ISO reports showed. Plaintiff Bycko is a member of the Third Party Subclass because she was insured by Farmers, not State Farm, when she made a claim against a State Farm insured 2018 that it reported to Verisk / ISO at that time. The affidavits and policies provided by State Farm indicate that Bycko was insured with State Farm starting in 2022. As discussed above, since there is no valid way for State Farm to disclose PPI regarding persons who

---

[12] The first four provisions under the policy language regarding when State Farm "may disclose" certain information (D.E. 21-13 (PageID 646)) do not apply because the disclosure must either: be specific to "our [State Farm's] business functions," which giving the data to a third party is not, or be "required" by law. The only requirement for reporting identified by State Farm was where fraud was suspected, and that does not apply to Plaintiffs.

are neither "consumers" nor "customers," its disclosures of information for the Third Party Subclass are per se unauthorized.

Third-party class members are not "consumers." A "'consumer' means an individual who seeks to obtain, obtains or has obtained an insurance product or service from a licensee…." OAC 365:35-1-4(6). Third-party class members are not "customers." A "'customer' means a customer of the licensee as defined in § 365:35-1-4(9)." When Bycko made her claim regarding a 2018 injury, she had neither sought coverage from State Farm nor was she covered by State Farm. Therefore, she was neither a "consumer" nor a "customer." There is no provision in Oklahoma law allowing disclosure of PPI for persons who are neither "customers" nor "consumers" of State Farm and for whom the requisite privacy notice, obtaining consent, and providing an opportunity to opt-out have not been provided. OAC 365:35-1-10 et seq.

### V. Insurance Policies Must Comply with Oklahoma Law, So Alleging that State Farm's Conduct Violated Specific Oklahoma Insurance Law Per Se Amounts to Breach of Contract.

State Farm's arguments regarding the breach of contract claim are trite, and to the extent that they raise any legitimate issues, they can be remedied by an easy amendment. First, it is obvious and undisputed that the First Party Subclass has an insurance contract with State Farm. See Compl. ¶ 36(b) and ¶ 65.

State Farm is well aware which of the Plaintiffs have an insurance policy with State Farm. (D.E. 21-8, PageID 424) (Decl. of Jonathan Owen). In fact, State Farm asks the Court to take judicial notice of the policies issued to Plaintiffs. (Doc. 21-20 Page IDs 880, 881.) Then State Farm complains that Plaintiffs did not allege that they were issued at least one policy. However, to the

extent that the federal pleading code may require restating the obvious, Plaintiffs can easily amend to allege which Plaintiffs are asserting a breach of contract claim, to wit: all but Bycko.[13]

Regarding what specific policy provisions were breached, Plaintiffs pled what Oklahoma law requires regarding disclosure of PPI, and any insurance policy in Oklahoma must comply with the requirements of Oklahoma law. "Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy." *Shepard v. Farmers Ins. Co., Inc.*, 1983 OK 103, ¶ 2; 678 P.2d 250, 251.   Therefore, since Plaintiffs have shown that Oklahoma law forbids the disclosure of PPI in this case, the disclosures comprise a per se violation of the insurance agreement.

The pleading questions are somewhat complicated. It is fair to ask Plaintiffs to identify the specific contractual provisions that have been violated. However, the insurance policy does not make clear and express promises to Plaintiffs that it will not disclose information to third parties. As discussed above, it is mealy-mouthed regarding handling of PPI. However, clear law addresses disclosures of PPI to third parties in detail, and State Farm's policy with Plaintiffs must comply with Oklahoma law. Plaintiffs pled a breach of contract provisions that must be "written into the policy" by operation of law. Before State Farm can disclose PPI, it must secure consent, but it failed to do so, and thus breached its contract with the First Party Subclass. Compl. ¶¶ 68, 69.

State Farm's reliance on *Myers v. All. For Affordable Servs*, 371 F. App'x 950, 959 (10th Cir. 2010) is misplaced. The language recited was from a section that related to negligence, not to breach of contract. Further, the plaintiff in *Myers* only alleged an oral employment contract based on suspect and poorly defined circumstances, not breach of a written policy of insurance. Similarly,

---

[13] This claim by State Farm to lack knowledge is disingenuous. Before State Farm filed its Motion, Plaintiffs worked cooperatively with State Farm's counsel to allow identification of all named Plaintiffs within State Farm's databases.

*Erickson v. Indep. Sch. Dist. No. 1-41*, 2016 U.S. Dist. Lexis 162508, *4-6 (W.D. Okla. Nov. 23, 2016) was a case where the pro se plaintiff had been given two chances to replead adequately and had failed, and that set of circumstances sheds little light here. *Tilley v. Maier*, 495 F. App'x 925, 927 was cited by State Farm for the proposition that Plaintiffs probably ignored the policy provisions because the policy does not support Plaintiffs' claims. (D.E. 21-1, PageID 231). However, *Tilley* was a due process case in which the plaintiff "conceded that she could not maintain a breach-of-contract claim" so it is unclear how *Tilley* supports State Farm's proposition.

"Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy." *Shepard*, 678 P.2d at 251. Therefore, by pleading a clear violation of Oklahoma law, Plaintiffs pled a per se breach of contract by State Farm. Oklahoma law **IS** the relevant policy provision in this instance.

### VI.   *State Farm's Disclosures Are Highly Offensive, Public, and not of Legitimate Concern to Others, so a Cause of Action for Publicity of Private Facts Is Established.*

State Farm's argument that its disclosures are not "highly offensive" because they are authorized by Oklahoma law fails as discussed above. The provisions of GLBA, HIPAA and multiple cases cited herein illustrate public policy that private information is not to be disclosed except as clearly authorized by law.  Further, the Oklahoma Constitution and case law guarantees the right to privacy in personal papers. *Alva State Bank and Trust Co. v. Dayton,* 755 P.2d 635 (Okla. 1988). *Alva State Bank* centered on personal financial records, however non-public personal health information is arguably more sensitive than financial records. Further, the entire bundle of information submitted by State Farm to Verisk / ISO is even more problematic, providing telling insights into both finances and health of the Plaintiffs. The privacy harm to Plaintiffs is greater than the sum of the parts.

### A. Disclosures Are Highly Offensive.

To the extent that State Farm relies on 36 O.S. § 363(a), such reliance is offensive as casting Plaintiffs in a bad light as potential fraudsters with zero predicate established for such an inflammatory accusation. Under Oklahoma law, receiving PPI for one purpose and using or allowing it to be used for another purpose is actionable, whatever label may be applied to the claim. When providing "intimate, private information" for evaluation as a part of a potential transaction, the receiving party has an "implied duty to keep their customer's financial status confidential and not disclose it to third persons absent customer authority." *Djowharzadeh v. City Nat'l Bank & Trust Co.*, 1982 OK CIV APP 3, ¶¶20 – 24; 646 P.2d 616 (finding that the bank could be liable when a spouse of a bank employee took advantage of information conveyed to the bank by a potential borrower). Misuse of confidential information is a question for the jury, not a question that can be decided on summary judgment much less a motion to dismiss. *Jordan v. Shattuck Nat'l Bank,* 868 F.2d 383 (10th Cir. 1989).

The facts as alleged in the present case are similar (albeit with more sensitive data) to those alleged in the complaint for *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, in that case plaintiffs alleged, *inter alia*, that Facebook maintained an "information-sharing program with companies that the plaintiffs describe as business partners…The complaint alleges that Facebook shared information about its users with [its]…business partners, and that those companies in turn shared data with Facebook. These partnerships…were built in part on data reciprocity. Facebook and its partners agreed to exchange information about users' activities with each other." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 780-781 (N.D. Cal. 2019). Facebook moved to dismiss privacy claims, arguing that "the disclosure of sensitive user information to app developers and business partners would not be offensive to a reasonable

person." *Id.* at 796. This argument was based on the "norm" in Facebook of sharing information as explained by the Court, "[t]he social norm Facebook created with its product is purposefully sharing with one's friends, not having one's information shared by Facebook with unknown companies and individuals. Second, it assumes that users consented to the widespread disclosure of their sensitive information, but plaintiffs have adequately alleged that they didn't. Thus at this stage of the case Plaintiffs have adequately alleged that Facebook's conduct was offensive and an egregious breach of social norms: it disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent, including their photos, religious preferences, video—watching habits, relationships, and information that could reveal location…" *Id* at 797.

Courts have been clear that medical information is subject to protection and its dissemination may form the basis for an invasion of privacy claim.  *See Smith v. Datla*, 451 N.J. Super. 82, 96-99 (App. Div. 2017) (finding disclosure of HIV status qualified for public disclosure of private facts); *Doe v. Barrington*, 729 F. Supp. 376, 382 (D.N.J. 1990) (noting that the U.S. Constitution protects individuals from government disclosure of medical information); *Westinghouse Elec. Corp.*, 638 F.2d at 577 (employee medical records clearly within zone of privacy protection); *In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987) (medical records clearly within constitutional sphere of right to privacy).

Similarly, in considering protecting employee identification numbers from disclosure under Oklahoma's Open Records Act, which expressly exempts employee social security numbers from disclosure, the court cited a number of decisions all of which stand for the proposition that the disclosure of personal records, such as a social security number would be highly offensive to a reasonable person. *Oklahoma Public Employees Ass'n v. State Ex Rel. Oklahoma*, 267 P.3d 838,

848-849 (Okla. 2011). For example, the Oklahoma Supreme Court repeatedly cited the Washington Court of Appeals decision in *Tacoma Public Library v. Woessner,* in which the Court was clear that "the disclosure of a public employee's social security number would be highly offensive to a reasonable person and not of legitimate concern to the public…[further] [w]e agree that the release of employees identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individuals concerning information unrelated to any governmental operation and impermissible invasions of privacy…" *Tacoma Public Library v. Woessner*, 90 Wash. App. 205, 222 (Ct. App. Wash. 1998).

Here, Plaintiffs have made allegations of even more egregious sharing of a single category of information. State Farm shared an amalgamation of data, of a more sensitive and personal nature, than were at issue in *Facebook* that forms the basis of the claim.  Specifically, State Farm shared the most sensitive information about them, including their medical data and financial data. Plaintiffs further allege that Defendants Verisk/ISO have taken that data, and not only shared the data itself but also analyzed the data and sold the analysis of the data to third parties in a wide variety of sectors (certainly not limited to the insurance industry) including companies, governmental agencies, and individuals around the world who have nothing to do with adjusting claims related to the individuals about whom information is shared.

To the extent that State Farm disputes that the information at issue is sensitive, Plaintiffs respectfully submit that not only are the categories clearly private and sensitive, but also that the law is clear that the sharing of such information is offensive.  This case is more egregious than sharing medical records, a social security number or a tax return taken individually. State Farm is sharing that toxic mix of information taken together. This mass of data is far more sensitive than the information shared on Facebook, or practically any information at issue in prior cases.

**B.  Public Disclosure Was Made.**

In order to satisfy the "publicity" requirement for the tort of publicity given to private life "any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or a statement made in an address to a large audience is sufficient to give publicity within the meaning of the term as it is used in this Section." RESTATEMENT (SECOND) TORTS § 652D, Comment a.

Bureau of Labor statistics indicate that there are around 285,000 insurance adjustors in the United States.[14] Thus, even if disclosure was only made to insurance adjustors, Plaintiffs' PPI is exposed to a huge audience. That alone comprises a public disclosure.

State Farm shared Plaintiffs' PPI with Verisk / ISO which it knew or should have known, would put Plaintiffs' PPI in a database that is regularly accessed by a wide range of in companies and individuals. State Farm caused Plaintiffs' PPI to be placed in a database that is analyzed, and the results are regularly sold to companies, governmental agencies, and individuals around the world for a wide range of reasons having nothing to do with adjusting the claim of the person whose PPI is being sold. Compl. ¶ 19. The foregoing allegations plainly negate State Farm's allegation that the "only plausible reading of the Complaint is that Verisk / ISO run[s] a protected database accessible to a limited audience in the insurance industry." (D.E. 21-1, PageID 242.)

Verisk / ISO's trademark application envisions a huge offering of Plaintiffs' PPI to the "fields of energy and natural resources, agriculture, mining, transportation, supply chain logistics, engineering, weather, environment and climate, cartography, insurance, banking, finance, construction, real estate, law enforcement, emergency services, government, real estate (repeated

---

[14] The number of insurance adjustors was recovered on July 19, 2023 from the following Bureau of Labor web page: https://www.bls.gov/oes/current/oes131031.htm. The Court is entitled to take judicial notice of government statistics. *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996).

in original), and geopolitics." (Compl. ¶ 8(b) (quoting from Verisk / ISO's trademark applications).

Trademark filings at the United States Patent & Trademark Office are made under penalty of perjury.

Further, State Farm's contention that the allegations of the Complaint fail to plausibly show that State Farm "directed or agreed to any further dissemination by Verisk / ISO" is disingenuous at best. (D.E. 21-1, PageID 242.) The most plausible reading of the allegations is that Verisk / ISO has plans for disclosing Plaintiffs' PPI in a broad range of industries, and there are no discernible controls preventing Verisk / ISO from doing whatever it pleases with Plaintiffs' PPI.

State Farm cited *Regions Bank v. Kaplan*, 2021 U.S. App. Lexis 31542 (11th Cir. Oct. 19, 2021), but that case is inapposite because the party whose information was provided was fairly under suspicion for check kiting associated with complex and questionable financial transactions at the time of the report. No fraud was even alleged here. Further, only banks and law enforcement entities had access to Fraud Net in that case. Here, a wide range of industries from insurance to chemical manufacturers, energy producers, and credit card issuers, among others, have access to the ISO database.

Verisk argued its databases are not distributed to a large enough group of people to count as publicity.[15] This is in direct contradiction to its public statements to investors, for example in the 2020 Annual Report cited in the complaint where Verisk noted "Verisk customers included all of the top 100 U.S. P&C insurers for the lines of services we offer, insurers in international markets, seven of the top ten global chemical manufacturers, nine of the top ten global energy producers around the world, and the top 30 credit card issuers in North America, the UK, and

---

[15] See also the Bureau of Labor statistics above noting that there are more than 100,000 insurance adjustors in the United States to whom Plaintiffs' Private Information is disclosed.

Australia."            (See            Pg            23            available            at:
https://s29.q4cdn.com/767340216/files/doc_financials/2020/ar/Verisk-Annual-Report-2020-
Final-Bookmarked-Version-03_30_21.pdf) (cited in the Compl. at p.7, n.8).  As alleged in the

complaint "the inclusion of Plaintiffs' and Class Members' Private Information in Verisk / ISO's

databases is analogous to the publication of that information in a periodical – available to anyone

willing to pay the price to access the database." (Compl at ¶ 19.)

**C.  Disclosures Were Not of Legitimate Public Concern**

The information submitted by State Farm to Verisk ISO is "not of legitimate concern to

others" as clarified by Oklahoma law and preexisting rules more generally applicable to invasion

of privacy claims. Oklahoma law indicates that the public's right to access of the information and

disclosure associated with same is limited to instances of suspected fraud. 36 O.S. § 363(a).

Generalized privacy law addressing the "legitimate concern" language addressed whether

the information was generally newsworthy. *See, e.g., Anderson v. Blake*, 2005 U.S. Dist. Lexis

25654 (W.D. Okla. Oct. 21, 2005) ("right of an individual to keep information private must be

balanced against the right of the press to disseminate newsworthy information" and reciting cases

regarding whether the name of rape victims and photographs of persons may be actionable).

Defendants' argument goes too far when it contends that the existence of possible

economic value to the information renders it of "legitimate concern." Almost everything that any

one of us wants to keep private has an economic value for use in blackmail or other malodorous

endeavors. If any information that has economic value is of "legitimate concern" because it has

such economic value, then privacy rights cease to exist.

Even if there is a public interest in combating fraud, Oklahoma has codified how parties

suspecting insurance fraud should disseminate that information. 36 O.S. § 363.  "Any insurer,

employee or agent of any insurer who has reason to believe that a person or entity has engaged in or is engaging in an act or practice that violates any statute or administrative rule of this state related to insurance fraud shall immediately notify the Anti-Fraud Unit of the Insurance Department and, in the case of an allegation of claimant fraud, the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General."  36 O.S. § 363(a). To the extent that there is a public interest in the information, it is vindicated by specific statutory and regulatory provisions allowing disclosure when fraud is suspected. No fraud was suspected regarding any of Plaintiffs' claims, and there is no argument that the information was newsworthy. The PPI conveyed by State Farm to Verisk / ISO was not of legitimate public concern.

### VII.    State Farm's Disclosures Facilitate Unauthorized Access to PPI Constituting an Intrusion Upon Seclusion.

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1339 (Okla. 1978) (*Quoting* RESTATEMENT (SECOND) OF TORTS §652B). There are two elements to the claim, "(a) a nonconsensual intrusion (b) which was highly offensive to a reasonable person." *Gilmore v. Eogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994). Defendants' own cases establish that "illegal news gathering" can comprise an intrusion upon seclusion, and State Farm's cooperative gathering of Plaintiffs' PPI in violation of Oklahoma statutes comprises *de facto* illegal news gathering. (D.E. 21-1 PageID 247) (citing *Anderson v. Blake*, 2005 U.S. Dist. Lexis 25654 (W.D. Okla. Oct. 21, 2005)).

"While the phrase 'intrusion upon seclusion' may conjure images of the Peeping Tom – someone spying in another's home – the concept is clearly broader than that. It extends to the acquisition of any information to which the general public is not entitled". *Guilbeau v. Durant*

*H.M.A., LLC*, 2023 OK 80; __ P.3d __, (Okla. June 20, 2023). *Guilbeau* is instructive in this instance, in that case an expectant mother miscarried and employees of the hospital, without consent, took photographs of the child's remains.  *Id.* at *2. There, the hospital defended the intrusion upon seclusion claim, by arguing that since the photographs were taken at a hospital, there could be no intrusion upon seclusion since there could be no expectation of privacy. The Oklahoma Supreme Court was clear in rejecting this argument "the right to privacy is concerned with people, not places." *Id.* To the extent that other states may require a physical trespass to support an intrusion upon seclusion claim, Oklahoma has squarely rejected that rule. *Accord Vaught v. Hartford Life & Accident Ins. Co.*, 2011 U.S. Dist. Lexis 98945 (S. D. Ohio Sept. 1, 2011) (excessive investigation of an insurance claim may constitute intrusion upon seclusion); *Nader v. General Motors Corp.*, 31 A.D. 2d 392, 393 (N.Y. Ct. App. 1969) (unreasonable investigative tactics, though not fitting exactly with prior invasion of privacy cases is actionable).

Though the Oklahoma Court of Civil Appeals did not describe the case as an "intrusion upon seclusion" claim, that is the most plausible category for the *Diwharzadeh* case given that disclosure was only made to a very small group of people (wives of bank officers), so it was unlikely to be a publicity to private facts case. When providing "intimate, private information" for evaluation as a part of a potential transaction, the receiving party has an "implied duty to keep their customer's financial status confidential and not disclose it to third persons absent customer authority." *Djowharzadeh*, 1982 OK CIV APP at ¶¶20 – 24; 646 P.2d 616 (finding that the bank could be liable when a spouse of a bank employee took advantage of information conveyed to the bank by a customer). *Djowharzadeh* illustrates that when private information is received for one purpose, it cannot be conveyed to third parties who then make economic use of it for their own purposes, and a cause of action will lie for breach of the duty to hold the information confidential.

Plaintiffs respectfully submit that this case falls squarely within the bounds of Oklahoma's claim for intrusion upon seclusion. Plaintiffs have alleged that State Farm obtained their most personal information in the process of adjusting an insurance claim. They then transferred that data to an outside third party, Defendants Verisk/ISO for reasons unrelated to the adjustment of the particular claim. Additionally, as alleged in the Complaint, "adjusters routinely secure Verisk/ISO reports" as a part of handling a claim – should discovery reveal that State Farm adjusters secured class members data by ordering a Verisk/ISO report such an action would constitute an intrusion upon seclusion as well.

### VIII. State Farm Owes a Fiduciary Duty to Claimants, and It Breached That Duty by Disclosing PPI to Third Parties for Purposes Unrelated to Adjusting or Litigating a Claim.

There is a general duty to hold discovery information confidential for use only in the litigation for which it was received. *Maxey v. State Farm Fire & Cas. Co.¸* 2008 U.S. Dist. Lexis 136840 (S.D. Ohio Aug. 11, 2008) ("**State Farm's** request for a protective order limiting the use of information produced in discovery to this case…is well taken for the independent reason that discovery is appropriately limited to use in the litigation in which it is produced.").

"A special relationship exists between an insurer and its insured stemming from the quasi-public nature of insurance, the unequal bargaining power between the insurer and the insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable." *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2; 87 P.3d 559, 561-62. The special relationship creates a non-delegable duty of good faith and fair dealing on the part of the insurer and a breach of this duty gives rise to a separate cause of action sounding in tort. *Id.* at 562. "The duty of good faith and fair dealing applies to activities after the establishment of the insurer-insured relationship, and includes the claims handling process." *Id.*

Here, it is clear that State Farm has exploited the Plaintiffs with its unequal and unbalanced power. State Farm used its position as an insurer who provides vehicle insurance to the Plaintiffs, to scour the Plaintiffs' financial and medical records and sell them to third parties for exorbitant profit. Plaintiffs, as owners of their own financial and medical records, do not give consent to the sale of their records simply by creating an unbalanced relationship with State Farm.

Several of the claims Plaintiffs filed were litigated, and in that instance, a litigant either must tell the court of its intent to use the data for non-litigation purposes, or it waives that right. *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 210 F.3d 1, 16 (1st Cir. 2000) (party waived any right it might have secured to use discovery for non-litigation-related purposes when it did not present the arguments to the court); *Kilopass Tech. Inc. v. Sidense Corp.*, 2012 U.S. Dist. Lexis 47865 (N.D. Cal. Apr. 4, 2012) (it "might have been improper for Kilopass to use the subpoena list to make a non-litigation related sales call to a stranger").

### IX.   *Equitable Relief is Proper; the Only way to Avoid Future Harms is to Strip the Offending Data Out of Verisk / ISO's Database.*

Equitable relief is proper since future harms can only be avoided by removing the offending information from Verisk / ISO's database. *UP Aero, Inc. v. Knight*, 2014 Conn. Super. Lexis 1355 (Hartford Superior Court June 2, 2014) (refusing summary judgment where, although the plaintiff theoretically could seek contract damages for each violation going forward, injunctive relief to prohibit continuing violations would be improper). Oklahoma's constitution says that a "certain remedy [shall be] afforded for every wrong and for every injury to person, property or reputation." Okla. Const., Art. II, § 6. Since, as noted below, Plaintiffs' legal remedies are uncertain, Plaintiffs are entitled to alternatively assert a right to disgorgement or damages.

Disgorgement is an equitable remedy that requires a party who profits from wrongful acts to surrender any profits realized because of the wrongful conduct. *See City Council of City of*

*Orange Twp. v. Edwards*, 455 N.J. Super 261, 278-279 (App. Div. 2018).  Although disgorgement is to be "used sparingly," it is an available remedy regardless of whether the innocent party suffered damages.  *Id.* at 366 (citing *Cty. of Essex v. First Union Nat'l Bank*, 186 N.J. 46, 61 (2006)). The purpose of disgorgement is preventing unjust enrichment and deterring illegal conduct. *Id.*

Defendants monetized sensitive data and information, including medical health information, belonging to Plaintiffs and the putative class.  Unlike data breach privacy torts, which are focused on a privacy injury, Defendants affirmatively *sold* Plaintiffs' private data, and profited therefrom, so disgorgement of the profits from this improper sale is the equitable remedy. While nominal/tort damages may apply to the injury to Plaintiffs' privacy, Defendants should not be permitted to retain their ill-gotten gains.[16]

Until it is clear whether an adequate legal remedy exists, Plaintiffs should be allowed to plead in the alternative for an adequate remedy. Fed. R. Civ. P. 8(d)(2). *Accord Blaszkowski v. Mars, Inc.*, 2008 U.S. Dist. Lexis 139491 (S.D. Fla. Apr. 8, 2008 (refusing to dismiss an equitable remedy where it was unclear if an adequate remedy at law would exist).  Accordingly, dismissing Plaintiffs' demand for disgorgement at this early stage of pleadings, without the benefit of any discovery of the breadth of Defendants' fraudulently retained profits, would be improper.

Regardless of what State Farm may argue about damages, there is no way to prevent future harm to Plaintiffs and the General Class if their PPI remains in Verisk / ISO's database and subject to continuing disclosures in the future and if State Farm continues to report PPI to Verisk / ISO. Injunctive relief is the only way to prevent ongoing harm to Plaintiffs and the General Class.

---

[16] Regarding the availability of damages, Plaintiffs expect State Farm to argue out of both sides of their mouth. In the present context, Defendants argue that damages for increased policy premiums and denial of individual opportunity to profit from this data are available. Then, in the context of class certification or a motion for summary judgment, Defendants are likely to argue that damages are too attenuated or uncertain to recover. Again, at this early stage, dismissal of these claims pled alternatively is improper.

### X.     *Defendants' Futility Argument Is a Makeweight Argument Relying on Plainly Erroneous Authority, Perfunctorily Argued.*

State Farm's one paragraph arguing that amendment would be futile is a makeweight perfunctory argument. To the extent that State Farm attempts to bolster its contentions with real argument and authority in its reply, those arguments should be ignored. *Allstate Ins. Co. v. A&F Med., PC*, 2016 U.S. Dist. Lexis 168554 (E.D.N.Y. Dec. 6, 2016) (arguments raised for the first time in reply are properly ignored).

The only basis for the argument was the idea that 36 O.S. § 363(C)(1) – (3) allows reporting of fraud. However, as thoroughly argued above, that provision only shields reports that are directly related to investigating actual or suspected fraud. State Farm did not even hint that there was any suspicion of fraud regarding any Plaintiffs' claims. The provision cited by State Farm in support of its futility argument is inapplicable. Therefore, to the extent that the Court may find merit in any of State Farm's arguments, Plaintiffs should be afforded the opportunity to replead.

### <u>CONCLUSION</u>

Before the Court even addresses the merits, it should remand. However, if the Court addresses the merits, the Motion should be denied for the reasons noted herein. If the Court elects to consider State Farm's extensive set of exhibits, Plaintiffs must be given notice and an opportunity to submit materials in opposition. Finally, Plaintiffs should be given the opportunity to replead to remedy any defects identified by the Court.

Date: July 20, 2023                                    Respectfully Submitted,


                                                       */s/ James A Barry*_____
                                                       James A Barry
                                                       **POGUST GOODHEAD, LLC**
                                                       jbarry@pogustgoodhead.com
                                                       505 S. Lenola Rd., Suite 126
                                                       Moorestown, NJ 08057
                                                       Tel: 610-941-4204

                                                       Michael A. Galpern
                                                       **JAVERBAUM WURGAFT HICKS
                                                       KHAN WIKSTROM AND SININS, P.C**
                                                       NJ Attorney ID: 029031988
                                                       1000 Haddonfield-Berlin Road, Suite 203
                                                       Voorhees, NJ 08043
                                                       mgalpern@lawjw.com
                                                       T: 856-596-4100

                                                       MONTY L. CAIN, OBA #15891
                                                       ANTHONY M. ALFONSO, OBA# 32722
                                                       **CAIN LAW OFFICE**
                                                       P.O. Box 892098
                                                       Oklahoma City, OK  73189
                                                       Telephone: (405) 759-7400
                                                       Facsimile: (405) 759-7424
                                                       E-mail: clo@cainlaw-okc.com

                                                              - AND –

                                                       EDWARD L. WHITE, OBA #16549
                                                       TRAVIS D. MENDOZA, OBA #35185
                                                       **EDWARD L. WHITE, PC**
                                                       829 E. 33rd St.
                                                       Edmond, OK 73013
                                                       Telephone: (405) 810-8188
                                                       Facsimile: (405) 608-0971
                                                       E-mail: ed@edwhitelaw.com